2024 IL App (2d) 230572-U
No. 2-23-0572
Order filed September 3, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-1365 |
| ACO IVANOV, | ) ) ) | Honorable Patricia S. Fix, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's fully negotiated guilty plea waived his right to presentence credit beyond what was specified in the plea agreement.

¶ 2    Defendant, Aco Ivanov, appeals from an order of the circuit court of Lake County denying his motion under Illinois Supreme Court Rule 472(a)(3) (eff. May 17, 2019) to correct "[e]rrors in the calculation of presentence custody credit." According to defendant, per section 5-4.5-100(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-100(b) (West 2022)), he is entitled to 1064 days' credit for time spent "in home detention." We affirm.

¶ 3                                I. BACKGROUND

¶ 4                                    A. The Cook County Cases

¶ 5     Defendant's claim for sentencing credit rests primarily on proceedings that occurred in Cook County.  He relies specifically on Cook County case No. 19-CR-1300401.  The central premise of defendant's claim is that, when the trial court here imposed the bond conditions in Lake County in this case, defendant was on "home detention" as a condition of bond in Cook County. He argues that, because the court here stated that it was going to "put [defendant] on concurrent pretrial" in Lake County, the bond conditions "merged."  Thus, according to defendant, he became subject to home detention in Lake County and, as a result, was entitled to mandatory credit under section 5-4.5-100(b) of the Unified Code.

¶ 6     Defendant attached to his Rule 472 motion several documents related to the Cook County proceedings.  The documents concerned two different case numbers: case No. 19-CR-1300401 and case No. 19-CR-9123.  (In his arguments below and on appeal, defendant refers to only the former case.)  We glean the following facts from these documents.

¶ 7            1. Information Regarding Cook County Case No. 19-CR-1300401

¶ 8     Two documents attached to the Rule 472 motion were related to Cook County case No. 19-CR-1300401.  They were (1) a "Criminal Disposition Sheet" and (2) an "Order of Commitment and Sentence to Illinois Department of Corrections [(DOC)]."  Both were dated September 21, 2021.

¶ 9     The Criminal Disposition Sheet reflected that defendant had been charged with two counts of "residential burglary" (counts I and II), one count of "theft/stolen/intent $500<10k" (count III), one count of "possess burglary tools" (count IV), and one count of "theft con intent <$500 prior" (count V).  The "Criminal Disposition Sheet" also contained the following handwritten notations: "Ct 3, PG, JW, FG," "3 yr IDOC," and "830 days credit."

¶ 10    The Order of Commitment and Sentence reflected an arrest date of June 14, 2019, and indicated that (1) defendant had been sentenced on count III to three years in prison; (2) "defendant [was] entitled to receive credit for time actually served in custody for a total credit of *** 830 days, as of the date of this order"; and (3) "all other cpunts [*sic*] [were] nolle."

¶ 11                2. Information Regarding Cook County Case No 19-CR-9123

¶ 12    Four documents attached to the Rule 472 motion were related to Cook County case No. 19-CR-9123.[1]    They were (1) an "Information Indictment Return Sheet," (2) a three-page "Indictment," (3) a "Criminal Disposition Sheet," and (4) an "Electronic Monitoring Status Sheet."

¶ 13    These documents established that (1) on June 14, 2019, defendant was arrested by Niles police; (2) on July 3, 2019, he was indicted with two counts of residential burglary (720 ILCS 5/19-3(a) (West 2018)); and (3) on July 30, 2019, he pleaded not guilty to those charges.

¶ 14    There were no documents indicating when defendant posted bond after his June 14, 2019, arrest.    However, the Criminal Disposition Sheet, dated September 10, 2019, contained the following handwritten notation: "add EHM [(presumably, electronic home monitoring)] as a condition of bond."

¶ 15    The Electronic Monitoring Status Sheet was filed on September 21, 2021.  A line at the top read: "This defendant is currently on Sheriff's Electronic Monitoring."  It further provided: "The above named defendant has been released on a bond with the condition of electronic monitoring and has been scheduled to appear in court *** on 9/21/2021."  A handwritten notation on the bottom read: "PG, FG, 3yr IDOC."

---

[1]The bottom of each document read: "Purchased from re:SearchIL."

¶ 16    There is no judgment or sentencing order related to case No. 19-CR-9123 in the record.

¶ 17                      B. Preplea Proceedings in the Present Case

¶ 18    On June 19, 2019 (after his Cook County arrest), defendant was charged by information in the present case with residential burglary (720 ILCS 5/19-3(a) (West 2018)) and criminal trespass to a residence (*id.* § 19-4(a)(1)), stemming from offenses that occurred on May 4, 2019. The trial court issued a warrant for defendant's arrest on June 19, 2019. Defendant was taken into custody on June 21, 2019. The bond amount was set at $25,000 (10%), and defendant was ordered to have no contact with the victim. Defendant posted bond that same day.

¶ 19    On October 2, 2019, the parties appeared on defendant's motion to continue the trial date. Private counsel Sheldon Sorosky represented defendant, but attorney David Kerstein was present on Sorosky's behalf. After the trial court granted the motion to continue, the parties began discussing case management dates. The following colloquy occurred:

"THE COURT: *** There is a pretrial bond services report that I believe Mr. Sorosky asked for on the last date.

MR. KERSTEIN [(DEFENSE COUNSEL)]: I am in receipt of it.

MS. PASCUCCI [(ASSISTANT STATE'S ATTORNEY)]: Actually, [Y]our Honor ordered the pretrial bond service report.

THE COURT: Because there were bond—what was the bond? $25,000. He posted.

I did order the pretrial bond services report.

MS. PASCUCCI: Yes.

THE COURT: But he is on house arrest for a Cook County burglary charge.

MR. KERSTEIN: Your Honor, I have no idea. I am just—

THE COURT: That's what it is indicating on the fourth page of the pretrial report.[2]

MR. KERSTEIN: I will let Mr. Sorosky know that.

THE COURT: I am going to put him on concurrent pretrial here. Pretrial is likely to defer to the Cook County pretrial folks. But—

MR. KERSTEIN: So, nothing will—everything will stay as is for his work schedule at this point?

THE COURT: I—it's going to be at the discretion of pretrial. So, everything should be, yes. It sounds like he's on—based on what I am reviewing here—is he on 24[-]hour house arrest in Cook County?

MR. KERSTEIN: I don't have a clue, [Y]our Honor.

Judge, Mr. Sorosky can be here this afternoon. He has a trial in front of Judge Levitt. If that be the case.

THE COURT: Well, I don't want to interrupt that.

This should not impact his—if he is on house arrest in Cook County, then I suspect that nothing that pretrial is going to do here—Lake County pretrial—is going to be more restrictive.

But at least if there is an issue with his Cook County house arrest, pretrial will know about it here in Lake County, which is why I couldn't—

---

[2]Page four of the October 2, 2019, pretrial bond services report states: "The defendant is currently at liberty and reports being on house arrest for a Cook County burglary charge. He provided this officer with his Cook County pretrial officer[']s information ***."

MR. KERSTEIN: Judge, I just think that there is so much room for ambiguity and misunderstanding as a result of that, that it might cause him to lose a job. And he does have kids. And I think that you are already serving the purpose that you have already.

THE COURT: No.

I want him monitored by pretrial.

But I will be happy to let Mr. Sorosky argue this at 1:30."

¶ 20    Later that day, the colloquy continued with attorney Sorosky:

"MR. SOROSKY [(DEFENSE COUNSEL)]: Good afternoon, [Y]our Honor.

***

The only thing I would say is, in Cook County, [defendant] is on the Cook County Sheriff's home electronic monitoring program where he has to be home every night. He has a bracelet. And he is allowed to go to work. So, that was approved by the Cook County Judge. So, we'll comply with any request you want.

THE COURT: Is he on pretrial in Cook County, or is he on house arrest for a sentence?

MR. SOROSKY: No, he has not been sentenced.

THE COURT: All right.

MR. SOROSKY: But the slang expression is—

THE COURT: —is house arrest.

MR. SOROSKY: —is house arrest.

Correct.

He has not been sentenced.

THE COURT: So, he is on pretrial in Cook County?

MR. SOROSKY: Correct.

THE COURT: All right. I am going to keep him on concurrent pretrial here in Lake County. The curfew is going to be at the discretion of Lake County.

MR. SOROSKY: Okay.

THE COURT: What's likely to happen, Lake County is going to coordinate with Cook County and indicate that it's going to be the same curfew that allows him to work that it currently is.

But I am going to put him on pretrial because I did not know about this until I ordered a pretrial bond services report.

So—and then standard conditions of pretrial. You are to comply with their curfew conditions; no drugs, no alcohol, and any other pretrial conditions that you may have.

Other bond conditions are, no contact with *** [the victim], or his home in Buffalo Grove.

So, no drugs, no alcohol.

MR. SOROSKY: Okay. Fine."

¶ 21    According to a Lake County "Circuit Clerk Office Information Work Sheet," filed on October 2, 2019, defendant was released to "Pretrial Bond Supervision" (PTBS) with the following conditions: (1) "Curfew at the discretion of PTBS," (2) "Pretrial Bond Service Fee $100.00," (3) "No Drugs," (4) "No Alcohol," (5) "Random Testing & pay for tests *** at the discretion of PTBS," (6) "No contact or communication" with the victim or his residence, and (7) "Refrain from possessing a firearm or other dangerous weapons." The worksheet further indicated: "Additional Information: All conditions to run concurrent w[ith] Cook County conditions."

¶ 22     On August 30, 2021, defendant's PTBS officer sent the State a memorandum reporting that defendant had "tested positive for THC" on August 20, 2021. According to the memorandum, defendant

> "was released to Pretrial Bond Supervision on 10/2/2019, with the following conditions: Curfew at the discretion of Pretrial (8pm-9am), no drugs or alcohol with random testing at the discretion of Pretrial, no victim contact with [victim] or residence, no firearms or dangerous weapons, and all conditions run concurrent with Cook County conditions."

¶ 23     On February 18, 2022, defendant was taken into custody in Lake County for retail theft (case No. 22-CF-272). He was in custody for 21 days until posting bond on March 11, 2022.

¶ 24     On July 25, 2022, defendant moved to dismiss count I of the information in this case, raising constitutional challenges to the residential burglary statute. The trial court denied the motion.

¶ 25                    C. Guilty Plea Proceedings in the Present Case

¶ 26     On August 31, 2022, the parties presented the trial court with the terms of a negotiated plea agreement. The State presented the court with "signed plea paperwork," which the court took a brief recess to review. When the court recalled the case, the State presented the following "proposed disposition":

> "With regards to 19[-]CF[-]1365[,] the defendant would enter into a negotiated plea of guilty. Count One residential burglary. He would be pleading guilty of that one count felony offense, but he would be sentenced as an ex-offender. He would be sentenced to seven and a half years, 90 months in the [DOC] to be served at 50 percent followed by 18 months of Mandatory Supervised Release [(MSR)]. He would receive 21 days' credit for the time he served in the Lake County jail during the pendency of this case.

He would be required to pay restitution and fines and costs out of bond. He would be receiving credit for any time awaiting transport to the [DOC]. With regard to—the State would dismiss Count Two of 19[-]CF[-]1365, criminal trespass to residence.

For case number 22[-]CF[-]272[,] the defendant would enter into a negotiated plea of guilty for the offense of retail theft, a Class Four. That is Count One of one of the State's information. He would receive a straight conviction on that case, one day [*sic*] of conditional discharge. Fines and costs would be paid out of bond. There is no restitution on that matter because the goods were recovered. That is the sum and substance of the negotiation."

¶ 27 During the colloquy with the parties, the trial court inquired: "What is going on with the Cook County case?" The State advised the court that it was "resolved to a Class Three" and that defendant had been sentenced to "three years in the [DOC]." The State advised further that "[defendant] was given credit of 830 days" and was currently "on parole for that offense." The court inquired whether and for how long defendant went to "D.O.C" in the Cook County case, and the State replied: "According to [*sic*] approximately I think ten days. He was placed on 18 months of electronic home monitoring [(EHM)]. He's not getting credit for that time for this case." Immediately thereafter, the court asked defense counsel if "that [was] all correct," and counsel replied, "Yes, I believe what the State said is substantially accurate."

¶ 28 The trial court examined defendant. The court asked, "Did you hear what the lawyers told me about your plea agreement?" Defendant responded, "Yes." The court asked, "Is that your understanding of the plea agreement?" Defendant responded, "Yes." The court asked, "And is that how you want the Court to handle your case?" Defendant responded, "Yes, [Y]our Honor[.]":

Defendant also confirmed that he had not been promised anything other than what was indicated in open court in exchange for his guilty pleas.

¶ 29   After hearing the factual bases of the pleas and admonishing defendant, the trial court found that defendant's guilty pleas were knowingly and voluntarily entered and that adequate factual bases supported the pleas. The court also found that defendant knowingly and voluntarily waived his right to a presentence investigation report and sentencing hearing. Per the terms of the plea agreement, the trial court sentenced defendant (1) on residential burglary to 7½ years in prison (day-for-day credit), with credit for 21 days of presentence custody and any time awaiting transport to DOC, followed by a term of 18 months' MSR, and (2) on retail theft to one year of conditional discharge, as well as restitution and court costs. The State dismissed the criminal trespass charge.

¶ 30   A written "Order and Certificate of Felony Conviction" was prepared and signed by the State and then signed by defendant and the trial court. In addition to the agreed prison term, the order stated the following regarding credit against the sentence: "The defendant shall receive credit for time spent in the custody of the Lake County Jail awaiting transport to the [DOC]." It did not reflect the parties' agreement that defendant was to also receive credit for 21 days spent in presentence custody. However, the written "Judgment" and the "Criminal Case Custody and Related Credits Order" do reflect that defendant was to receive 21 days' credit for time spent in the Lake County Jail.

¶ 31                      D. Initial Rule 472 Motion and Appeal

¶ 32   On September 19, 2022, defendant filed a motion for additional sentencing credit under Rule 472. Defendant argued that he was entitled to 742 days' sentencing credit under section 5-4.5-100(c) of the Unified Code (730 ILCS 5/5-4.5-100(c) (West 2020)), which provides:

"An offender arrested on one charge and prosecuted on another charge for conduct that occurred prior to his or her arrest shall be given credit on the determinate sentence or maximum term and the minimum term of imprisonment for time spent in custody under the former charge not credited against another sentence."

According to defendant, he was entitled to credit for time spent on "electronic monitoring" in Cook County case No. 19-CF-1300401 from September 10, 2019, to September 21, 2021.

¶ 33    On September 29, 2022, before the trial court ruled on defendant's motion for additional sentencing credit, defendant filed a timely notice of appeal. On October 4, 2022, the trial court struck defendant's Rule 472 motion because the notice of appeal had been filed.

¶ 34    On appeal, defendant raised constitutional challenges to the residential burglary statute and argued that the trial court erred in dismissing for lack of jurisdiction his motion for additional sentencing credit. See *People v. Ivanov*, 2023 IL App (2d) 220364-U, ¶ 2. We rejected defendant's constitutional challenges. See *id.* ¶¶ 17-38. However, we agreed that the court erred in dismissing the motion for lack of jurisdiction. *Id.* ¶ 42. Thus, we affirmed defendant's convictions, but we vacated the order striking his motion for additional sentencing credit and remanded for further proceedings on the motion. *Id.* ¶ 46.

¶ 35                    E. New Rule 472 Motion and Proceedings on Remand

¶ 36    On remand, defendant filed a new motion for additional sentencing credit under Rule 472. Defendant's claim was now based on section 5-4.5-100(b) of the Unified Code, which provides that "[t]he trial court shall give credit to the defendant for time spent in home detention." 730 ILCS 5/5-4.5-100(b) (West 2022).

¶ 37    Defendant attached five exhibits. In addition to the documents noted above related to the Cook County cases, defendant attached the following documents related to the present case: (1) a

"case information sheet"; (2) memoranda from a PTBS officer notifying the State that defendant "tested positive for THC" on August 20, 2021, and "admitted to using medical marijuana" on January 21, 2022; and (3) a "remand" order indicating that defendant was entitled to "credit for 21 days previously served." He also attached three documents purportedly from the "Sheriff's Office Community Corrections—Electronic Monitoring (EM) Program (GPS)": (1) an unsigned and undated "Information Sheet" that sets out the rules and regulations of the program, (2) a blank "Participant Agreement," and (3) a blank "Participant Placement—Residential Consent Form."

¶ 38    Defendant set forth the following facts in support of his claim: (1) on September 10, 2019, he was placed on EHM in Cook County case No. 19-CR-1300401; (2) on October 2, 2019, in the present case, the trial court imposed bond conditions and stated that the conditions were to run "concurrent with [d]efendant's Cook County Bond conditions"; (3) the Lake County bond conditions included "[c]urfew at the discretion of [PTBS] (8pm-9am)"; (4) on September 21, 2021, defendant was convicted "in the Cook County case" and removed from EHM, (5) "[d]efendant spent 2 years and 11 days in custody under the former charge, which was not credited against [his] sentence"; and (6) defendant spent 1064 days (October 2, 2019, through August 31, 2022) under a discretionary curfew in Lake County.

¶ 39    Defendant argued that he was entitled to sentencing credit from October 2, 2019, through August 31, 2022. According to defendant, the Cook County bond conditions required him to be placed on "home detention." Thus, once the trial court in the present case ordered (on October 2, 2019) that all conditions of bond were to run concurrent with the conditions of bond in the Cook County case, the court "merged the home detention conditions into the [present] [c]ase and the number of days spent in custody in Cook County were now a result of the offense for which the sentence was imposed in Lake County." Defendant argued further that, in addition to ordering the

bond conditions to run concurrent, the trial court imposed a discretionary curfew in Lake County that was more than 12 hours. Thus, according to defendant, he should receive credit from October 2, 2019, through sentencing in this case on August 31, 2022 (1064 days). (Defendant argued "in the alternative" that he should receive even more credit—from September 10, 2019, through August 31, 2022, but he makes no such claim on appeal.)

¶ 40    Although the record contains no response from the State, defendant filed on October 25, 2023, a reply in support of his Rule 472 motion. The reply referenced five exhibits—"Exhibit 2," "Exhibit 3," "Exhibit 6," "Exhibit 7," and "Exhibit 8"; however, no exhibits were attached.[3]  In reply, defendant additionally argued that "the trial court had no authority to order, and the State had no authority to agree, that the defendant's sentence was not subject to the mandatory requirements of [section] 5-4.5-100[(b) of the Unified Code]." Defendant argued further that the written plea agreement did not exclude the presentence credit.

¶ 41    Following a hearing on December 1, 2023, the trial court denied defendant's motion. The court found, first, that "defendant was not on Lake County leg monitor, *** defendant was not on Lake County home detention." Second, the court found that, even if defendant were entitled to

---

[3]On June 4, 2024, after briefing had been completed in this appeal, defendant filed a motion to supplement the record with (1) "[defendant']s fully executed *** Sheriff EHM documents," which he claimed had been attached as an exhibit to his reply, and (2) the State's response to defendant's Rule 472 motion. The State filed an objection. On June 10, 2024, we denied the motion to supplement, stating: "Among other reasons, as the appeal is fully briefed, the motion is untimely."

presence credit for time spent on home detention in Cook County, the record showed that defendant had agreed to exclude that credit when he pled guilty.

¶ 42    Defendant timely appealed.

¶ 43                                    II. ANALYSIS

¶ 44    Defendant seeks sentencing credit of 1064 days from October 2, 2019, through August 31, 2022, based on (1) the trial court's order that the Lake County bond conditions were to run "concurrent with" the Cook County bond conditions, which, according to defendant, included "home detention," and (2) the court's order that defendant be subject to a curfew of 8 p.m. through 9 a.m.

¶ 45    In response, the State contends that, based on *People v. Wells*, 2024 IL 129402, defendant waived any right to presentence credit beyond the 21 days to which the parties agreed as part of the plea terms. The State further contends that, waiver aside, defendant was not in pretrial custody in Lake County during the period at issue because the Cook County bond conditions did not "merge" with the Lake County bond conditions. The State contends further that, even if the conditions did merge, defendant was not on "home detention" in Cook County for purposes of receiving presentence credit.

¶ 46    Section 5-4.5-100(b) of the Unified Code (730 ILCS 5/5-4.5-100(b) (West 2022)) provides:

> "(b) CREDIT; TIME IN CUSTODY; SAME CHARGE. Except as set forth in subsection (e), the offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed. The Department shall calculate the credit at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3). The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms

as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for purposes of sentencing credit. ***."

Whether a defendant is entitled to receive presentence custody credit against his sentence is subject to the *de novo* standard of review. *People v. Clark*, 2014 IL App (4th) 130331, ¶ 15.

¶ 47 Defendant argues that sentencing credit under section 5-4.5-100 of the Unified Code (730 ILCS 5/4.5-100 (West 2022)) is mandatory. See *People v. White*, 357 Ill. App. 3d 1070, 1073 (2005). Defendant cites cases he believes demonstrate that the State had no authority to recommend, and the trial court had no authority to accept, a sentence recommendation that did not comply with the mandatory requirements of section 5-4.5-100 of the Unified Code. See *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 557 (2002) ("[T]he trial court had no authority to order, and the State had no authority to agree, that the defendant's eight-year sentence was not subject to truth-in-sentencing."); *People v. Holt*, 151 Ill. App. 3d 337, 340 (1986) (finding that the trial court exceeded its authority in accepting a plea agreement that did not award defendant credit for time spent in custody for the same offense).

¶ 48 *Wells* is the supreme court's latest pronouncement on the capacity of a defendant to enter a negotiated plea that waives a statutory right to presentence credit. Although *Wells* is not entirely on point, we agree with the State that, even if defendant was entitled to additional presentence credit, under *Wells* he is foreclosed by his negotiated plea agreement from seeking that credit.

¶ 49 In *Wells*, the defendant was charged with one count of cannabis trafficking and two counts of unlawful possession of cannabis with the intent to deliver. *Wells*, 2024 IL 129402, ¶ 3. After

his arrest, the defendant spent 54 days in custody before posting bond. *Id.* As a condition of his release, he was subject to around-the-clock GPS monitoring with an ankle bracelet and a curfew. *Id.* ¶ 4. The defendant was subject to those bond conditions, as modified a few times, for just over six months. *Id.* ¶ 4. The parties later agreed to a fully negotiated plea. *Id.* ¶ 6. The defendant pleaded guilty to unlawful possession of cannabis with the intent to deliver, in exchange for 6 years in prison with 54 days' credit for time served. *Id.* ¶¶ 6-8. The defendant orally confirmed with the trial court his agreement to the terms of the plea. *Id.* ¶ 7. In addition, the parties executed a written plea agreement that expressly provided for 54 days' credit. *Id.* ¶ 8. It was signed by the State, the defendant, and the defendant's attorney. *Id.* The trial court sentenced the defendant per the agreement. *Id.* The defendant did not file a postplea motion or an appeal. *Id.* ¶ 9. However, the defendant filed a motion seeking additional sentencing credit for time spent on home detention before the plea. *Id.* The court denied the motion. *Id.* On appeal, the appellate court affirmed, concluding that " 'a fully negotiated guilty plea constitutes a waiver of presentence custody credit not provided for in the plea agreement.' " *Id.* ¶ 11 (quoting *Wells*, 2023 IL App (4th) 220552-U, ¶ 22).

¶ 50    The supreme court affirmed. *Id.* ¶ 1. The court recognized the right to credit for presentence home detention. *Id.* ¶ 18 (citing 730 ILCS 5/5-4.5-100(b) (West 2020)). Nonetheless, the court, applying contract principles, held that the defendant waived his right to that credit in exchange for benefits as part of a fully negotiated plea:

"[W]here a fully negotiated plea deal represents a complete and final expression of the parties' agreement, a presumption arises that every material right and obligation is included and neither party may unilaterally seek modification of the agreement. Applied to this case, a presumption arises that the parties intended for [the defendant] to receive exactly

54 days of credit because that was a clear and unambiguous term of the agreement. The plea deal here is a complete and final expression of the agreement between [the defendant] and the State. The fully negotiated plea agreement encompassed all relevant considerations, and the parties expected the trial court to immediately enter a final judgment consistent with the terms of the agreement. In fact, specific terms in the written agreement, signed by [the defendant] himself, made the agreement contingent on the trial court imposing a 6-year sentence with credit for 54 days. There is no ambiguity in what the parties intended the sentence and credit to be. Thus, the parties are bound by the terms of the written agreement. [The defendant] is not entitled to additional credit not included in the agreement." *Id.* ¶ 24.

¶ 51 The State argues that, here, "[t]he plea agreement provided that defendant was to receive credit for twenty-one days spent in pre-sentencing custody." However, although the transcript from the plea proceedings indicates that the parties agreed that defendant was to receive credit for 21 days spent in presentence custody, the only reference to presentence credit in the *written* agreement is that "[t]he defendant shall receive credit for time spent in the custody of the Lake County Jail awaiting transport to the [DOC]." This refers to time spent in custody awaiting transport *after* sentencing. It is distinct from the 21 days' *presentence* credit that the parties contemplated, which comprised the time defendant spent in custody from his arrest in Lake County on February 18, 2022, for retail theft (in case No. 22-CF-272) until his release on bond on March 11, 2022. Thus, unlike in *Wells*, the *written* agreement here does not automatically foreclose defendant's claim.

¶ 52 Nevertheless, the transcript of the plea proceedings *does* clearly foreclose defendant's claim and makes clear that the term was omitted from the written agreement by mutual mistake.

In *Wells*, the supreme court recognized that " 'contracting parties' mutual mistake may be rectified by recourse to contract reformation [citation], where they are in actual agreement and their true intent may be discerned.' " *Id.* ¶ 26 (quoting *People v. Donelson*, 2013 IL 113603, ¶ 20). Here, the transcript established the terms of the parties' agreement as well as defendant's agreement with those terms. At the outset of the proceedings, the State presented the proposed agreement, which included the following terms:

> "[Defendant] would be sentenced to seven and a half years, 90 months in the [DOC] to be served at 50 percent followed by 18 months of [MSR]. He would receive 21 days credit for the time he served in the Lake County jail during the pendency of this case."

When the court inquired about the "Cook County" case, the State commented that defendant had been "placed on 18 months of [EHM]" and that he was "not getting credit for that time for this case." Defense counsel agreed that the State's representation was "substantially accurate." When the court asked defendant whether he had heard the terms of the agreement and whether that was how he wanted the court to "handle" the case, defendant responded, "Yes, [Y]our Honor." Thus, it is clear that defendant was well aware, and agreed, that he was to receive only 21 days' *presentence* credit and that he would be receiving no credit for any time spent on EHM in Cook County. Because the record indicates that the parties' intent was that defendant would receive only 21 days' sentencing credit, the principles of contract reformation allow us to "reform" the written agreement to expressly include 21 days' sentencing credit. Indeed, the written "Judgment" and the "Criminal Case Custody and Related Credits Order" already properly reflect that defendant was to receive 21 days' credit for time spent in Lake County Jail.

¶ 53 Defendant argues that *Wells* is distinguishable because it did not involve credit for time spent in simultaneous custody on two unrelated charges. We fail to see the relevance of that distinction, given that the trial court here specifically addressed the unrelated case.

¶ 54 Defendant also argues that "*Wells* expressly holds that it does not apply when due process concerns are raised in enforcement of a negotiated agreement." Defendant directs us to this footnote in *Wells*:

"[Our] holding is qualified by our previous recognition that the application of contract principles to plea agreements is tempered in some instances by due process concerns. See [*People v.*] *Evans*, 174 Ill. 2d [320], 326-27 [(1996)]. [The defendant] has not raised any due process concerns specific to his case, and thus, we need not analyze when the enforcement of a plea agreement may raise constitutional concerns." *Wells*, 2024 IL 129402, ¶ 24 n.5.

To avoid our applying *Wells*, defendant purports to raise the following "due process concerns." Defendant argues that section 5-4.5-100 of the Unified Code "creates a statutory right to credit," which applies "by operation of law." Citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), he argues that "[t]his right and procedure is sufficiently embraced within Fourteenth Amendment 'liberty' and the Due Process Clause to ensure that this state-created right is not arbitrarily abrogated or denied." If the existence of a statutory right to sentencing credit were enough to trigger due process concerns, *Wells* would have been decided differently.

¶ 55 Notably, "[b]y entering a plea agreement, a defendant " 'forecloses any claim of error. "It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, *including constitutional ones*." ' " (Emphasis in original.) *People v. Jones*, 2021 IL 126432, ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33, quoting *People v. Townsell*, 209 Ill. 2d

543, 545 (2004)). Nevertheless, despite the waiver, a defendant may collaterally challenge the constitutionality of his guilty plea either by claiming "(1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty." *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005). Here, as was the case in *Wells*, defendant has not attempted to invalidate the guilty plea. Instead, he seeks to maintain the benefits of the plea agreement while increasing the amount of credit he receives. Under *Wells*, he cannot do this. See *Wells*, 2024 IL 129402, ¶ 27.

¶ 56                                      III. CONCLUSION

¶ 57    For the reasons stated, we affirm the trial court's order denying defendant's motion for additional sentencing credit.

¶ 58    Affirmed.