2025 IL App (1st) 241141

No. 1-24-1141

Opinion filed September 29, 2025.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 9104 |
| | ) | |
| KENNETH PERTEET, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | James B. Novy, |
| | | Judges Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2023, defendant Kenneth Perteet pleaded guilty to unlawful possession of a weapon by a felon (UUWF) in exchange for a 10-year sentence and 396 days of presentence custody credit. Defendant subsequently filed a *pro se* postplea motion asserting he was entitled to 319 days' additional presentence custody credit for completing county programs while in jail on the present case. The circuit court denied his motion. Defendant appeals pursuant to Illinois Supreme Court

Rule 472 (eff. May 17, 2019) seeking remand to correct the alleged sentencing error and calculation of presentence custody credit.[1] We affirm.

¶ 2                                     BACKGROUND

¶ 3      Defendant was charged with being an armed habitual criminal, UUWF, and three counts of aggravated unlawful use of a weapon after police arrested him on July 11, 2022, for running in a public alley with a visible gun in hand that defendant then threw over a fence. During pretrial proceedings in spring 2023, the parties announced that the State had made a plea offer on the less serious charge of UUWF (count II), a Class 2 felony, in exchange for a minimum of 10 years in prison out of a possible 14 years, to be served at 50%.[2] See 720 ILCS 5/24-1.1(a), (e) (West 2022). Pursuant to defendant's request, an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference was held off-record. On July 25, 2023, following admonishments, defendant knowingly and voluntarily pleaded guilty to UUWF after waiving his right to a jury trial orally and in writing. The State offered a factual basis, and the parties stipulated to a certified copy of conviction showing defendant previously was convicted of UUWF. The report of proceedings reflects that the court entered a guilty finding, the State nol-prossed the remaining counts, and defendant in writing waived his presentence investigation report. The court then entered the guilty plea judgment and order on July 25, noting that defendant was in custody, bail was revoked, and the matter was

---

[1]In the "nature of the case" section of his brief, defendant frames the proceedings below and on appeal as taking place under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2024)). However, in the body of his brief, he correctly proceeds to address this case under Rule 472. See *People v. Wells*, 2024 IL 129402, ¶ 16 (finding, the substance of the defendant's motion was consistent with and controlled by Rule 472). The State does not object. Accordingly, we address the issues presented here under the law governing Rule 472 and the prior plea proceedings.

[2]Notably, while incarcerated, defendant also had another armed habitual criminal case pending in Maywood, Illinois. As to the present case (No. 22 CR 9104), the State at first offered to "conference" only count I, being an armed habitual criminal, a Class X offense that carried 6 to 30 years at 85%. See 720 ILCS 5/24-1.7(a), (b) (West 2022); see also 720 ILCS 5/24-1.7(a) (West 2024) (renaming "[a]rmed habitual criminal" as "[u]nlawful possession of a firearm by a repeat felony offender"). Defense counsel rejected the conference initially.

continued for sentencing ("Motion Deft - Continuance; C01, C03, C04, C05[,] *Nolle Prosequi*; C02 Plea of Guilty[,] Jury Waived, Finding of Guilty - Guilty Plea").

¶ 4    Prior to the conclusion of the July 25 plea hearing, the court noted that, at sentencing, "we will calculate time credits." Addressing defense counsel, the court explained that its "custom" with "program credits" was to enter an order stating the court has "no objection to the Department of Corrections giving an additional credit for program participation." The court explained it did not "do it from the bench" but would attach said order to the mittimus. It emphasized that the Department of Corrections "will do it, they usually do it, but I will make it clear I'm not objecting to it."

¶ 5    At the ensuing sentencing hearing on August 10, 2023, the parties presented evidence in aggravation and mitigation, and the defense rested on "what we discussed at the conference." Following that, the court asked, "How many days are you claiming of actual time in custody?" Both the State and defense counsel replied "396." The court then sentenced defendant "as *** promised to ten years in the penitentiary, credit for 396 days served," but in the same breath queried, "[h]e's asking for additional credits for program participation?" Defense counsel responded, "Yes," clearly referring to defendant. The court again stated its policy was to "indicate" that it has "no objection to the Department of Corrections giving any of those credits in their discretion." The court stated, "I'm certainly not standing in the way, and it will be part of the mittimus."

¶ 6    The court admonished defendant regarding his right to appeal and withdraw the guilty plea, then asked defendant if he had any questions. Defendant stated he had been "locked up" 13 months, "[s]o that will be 396 days," which the court confirmed. Defendant then added that he "worked sanitation." The court replied, "When you go down to the institution, all the documents are here if

they think you are entitled [to] those credits. I'm just not going to *calculate* them here from the Bench, but they will do it down there." (Emphasis added.) The court repeated it was not "standing in the way." Defendant responded, "But once I get down to IDOC, they [are going to] tell me it was up to whatever I did in here." The court replied, "No. They are going to have the documentation showing this is what you did. And also they have an order from me saying that I'm not objecting to you getting those extra credits." Defense counsel then clarified on the record that defendant had 109 days of sanitation work, which was verified with the sheriff and which "we put on the order." Counsel also noted defendant had 83.5 hours of educational credit. The court repeated that the Department of Corrections could give defendant those credits but it was not "doing it from the Bench." The State did not object to the colloquy regarding sentencing credit, and the plea proceeding concluded.

¶ 7     A sentencing order also serving as the mittimus and file stamped August 10, 2023, reflected that defendant received a 10-year prison sentence for UUWF (count II) and 396 days of credit for time served.[3] Attached to this order was another handwritten order, also file stamped August 10, stating that defendant had completed 109 days of work as a sanitation worker at the Cook County jail while in custody for this case and 53 "EDVO courses" for a total of 84.39 hours of education. The order stated that verification as to both programs was "attached." The order stated that the court had "no objection to IDOC considering these courses and work days *** toward additional days of credit."

¶ 8     The first verification document was a form issued by the Cook County Sheriff's Office, sent to defendant on August 8, 2023, which stated "Confirming, [defendant] served as an

---

[3]The sentencing order was titled "ORDER OF COMMITMENT AND SENTENCE TO ILLINOIS DEPARTMENT OF CORRECTIONS."

[Individual in Custody] worker for a total of 109 days while in CCDOC custody (payroll statement is attached)," although the record does not contain the referenced "payroll statement." The second document was titled "Edovo Transcript" and dated "February 6, 2023 – July 31, 2023." It stated that defendant completed 53 "courses," completed 46.83 "course hours," and spent 84.39 hours "in education." In a section titled, "Kenneth Perteet – Completed Coursework," the document further stated that, on February 16, 2023, defendant completed a program called, "Brian Hamilton Foundation's Starter U," with "9.46 hours spent," and that, on March 13, 2023, he completed "Parenting While Incarcerated," with "6.82 hours spent."

¶ 9    Defendant did not file a motion to withdraw his guilty plea or a direct appeal. On April 4, 2024, however, he filed a *pro se* "motion to correct mittimus pursuant to 730 ILCS 5/5-4.5-100(c-5)" to reflect an additional 319 days' credit (representing 109 days spent as a sanitation worker and 210 days of education courses) for program work earned while in jail. Attached to the motion were the two sentencing orders.

¶ 10    On April 12, 2024, the circuit court called the case with only the State appearing. The State noted the Department of Corrections apparently was not giving defendant the 319 days' credit and asked that the court "strike" the motion, arguing the mittimus could not be corrected. The court denied the motion on the record, reasoning that, at the sentencing and guilty plea hearings, it advised defendant the program credit was subject to the discretion of the Department of Corrections. The court observed that the Department of Corrections was "not giving him credit *** for one reason or another, and there's nothing that this court has the authority to do."

No. 1-24-1141

Defendant timely appealed the denial of his motion pursuant to Illinois Supreme Court Rule 472 (eff. May 17, 2019).[4]

¶ 11                                                    ANALYSIS

¶ 12    Rule 472(a)(3) provides that "[i]n criminal cases, the circuit court retains jurisdiction to correct" errors in the "calculation of presentence custody credit" at any time following judgment and "after notice to the parties *** on motion of any party." Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019). On appeal, defendant argues the Rule 472 court, in error, declined to calculate and determine the program sentencing credit he was due and asks that we remand the cause.

¶ 13    The State responds that defendant is not entitled to remand because he waived any additional sentencing credit by entering into a fully negotiated guilty plea that did not include credits for his county work programs.[5] The State relies principally on the recently decided supreme court case, *People v. Wells*, 2024 IL 129402, ¶ 21, which observed that the construction of terms in a plea agreement is a matter of *de novo* review.

---

[4]We note that the circuit court's judgment was entered April 12, 2024; defendant placed his notice of appeal, accompanied by a proper certificate of service, in the mail at Robinson Correctional Center on May 8, 2024, and the circuit clerk filed stamped the notice of appeal on May 17, 2024. Although a defendant must file a notice of appeal from the denial of a Rule 472 motion within 30 days (see Ill. S. Ct. R. 472(b) (eff. Feb. 1, 2024)), pursuant to the mailbox rule, defendant's notice of appeal was considered timely filed as of the date he sent it via mail, May 8, 2024. See Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017); *People v. Shunick*, 2024 IL 129244, ¶ 34. We see no reason why the mailbox rule should not apply in the context of Rule 472 motions given that it applies in appeals from postconviction petitions. See *People v. Hayes*, 2022 IL App (1st) 190881-B, ¶ 18.

[5]The parties do not dispute that defendant entered into a fully negotiated plea agreement, insofar as defendant agreed to plead guilty to count II, a lesser charge, in exchange for the State's recommendation of a minimum 10-year prison term (out of 14 possible years) and the State's *nolle prosequi* of the remaining charges. See *People v. Diaz*, 192 Ill. 2d 211, 222-25 (2000); *People v. Lumzy*, 191 Ill. 2d 182, 185-87 (2000); see also Ill. S. Ct. R. 604(d) (eff. Sept. 18, 2023) (noting "a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending"). A defendant who enters into a fully negotiated plea agreement cannot later attempt to reduce his agreed sentence without first moving to withdraw the guilty plea. *Lumzy*, 191 Ill. 2d at 186-87.

¶ 14   In *Wells*, the defendant and the State entered into a fully negotiated written plea agreement that imposed a 6-year prison sentence and established the defendant was entitled to 54 days of presentence custody credit. *Id.* ¶¶ 6-8. As in this case, the defendant did not file a postplea motion or a direct appeal but ultimately filed a motion pursuant to Rule 472 seeking additional credit for time he spent on home detention, which was denied. *Id.* ¶¶ 9, 16. Although the State conceded that, plea aside, the defendant would be entitled to at least 127 extra days of additional credit for time spent on home detention (see 730 ILCS 5/5-4.5-100(b) (West 2020)), our supreme court held that the defendant had agreed to forgo that sentencing credit by entering into the fully negotiated guilty plea. *Wells*, 2024 IL 129402, ¶¶ 18-19, 24; *cf. People v. Whitfield*, 217 Ill. 2d 177, 187 (2005) (finding a term of supervised release, attached to a sentence, is statutorily mandated and cannot legally be struck from the sentence); 730 ILCS 5/5-4.5-15(c) (West 2022). The supreme court found both parties were bound by the complete, final, and unambiguous agreement, which specified that the defendant would receive exactly 54 days of credit, and on which the trial court entered judgment. *Wells*, 2024 IL 129402, ¶ 24. As such, the defendant was foreclosed from unilaterally modifying the agreement. *Id.* The supreme court thus affirmed the denial of the defendant's Rule 472 motion and made clear that certain presentencing custody credits are negotiable at plea hearings. *Id.* ¶ 30. Evidently, then, certain credits can be negotiated during a plea just like the charges lodged and like a sentence that is within the bounds of the statutory range associated with the offense.

¶ 15   The State argues that, as in *Wells*, defendant is foreclosed from seeking the additional credit of 319 days because it was not a term of his plea agreement. Defendant, for his part, does not claim that the program sentencing credit was a term of his negotiated plea. Rather, he maintains that the circuit court, both in denying the Rule 472 motion and at the sentencing hearing, incorrectly

referred the matter to the Department of Corrections. Defendant contends the court at sentencing thereby abdicated its statutory duty of calculating the work and educational program credit and effectively precluded those credits from entering the plea agreement. On that basis, defendant claims he is entitled to remand and a hearing on the program credits due.

¶ 16    In so arguing, defendant rightly notes that, under section 5-4.5-100 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-100 (West 2022)), the "*trial court* shall give the defendant credit for successfully completing county programming while in custody *prior to imposition of sentence* at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3)." (Emphases added.) Section 3-6-3(a)(4)(A) (*id.* § 3-6-3(a)(4)(A)) of the Code, in turn, provides that a defendant who completed a "full-time, 60-day or longer" substance abuse, educational, or behavior modification program or a life skills course or a re-entry planning program, is to receive one sentencing credit for each day of activity. Section 3-6-3(a)(4)(A) further states that "[c]alculation of this county program credit *shall be done at sentencing* as provided in Section 5-4.5-100 of this Code and *shall be included in the sentencing order*." (Emphases added.) *Id.* Similarly, under section 3-6-3(a)(1.5)(A) and (C), sentencing credit may be awarded for "successful completion of programming while in custody of the Department of Corrections **** or while in custody prior to sentencing" or for "service to the institution, service to a community, or service to the State," although it does not identify the number of credits. *Id.* § 3-6-3(a)(1.5)(A), (C); see *id.* § 3-1-2(b), (c), (d) (defining a correctional institution as one where a person committed to the Department of Corrections following conviction is securely kept).

¶ 17    Based on the foregoing, a trial court unquestionably has the responsibility of determining the presentence custody programming credit due to a defendant at sentencing, as prescribed by the

legislature.[6] *People v. Williams*, 239 Ill. 2d 503, 508 (2011); *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 20.[7] While the statutes at issue do not specifically call for the trial court itself to calculate the credit, an award of credit at sentencing necessarily encompasses the duty and authority to calculate the credit due. See *Montalvo*, 2016 IL App (2d) 140905, ¶ 20.

¶ 18    The trial court in this case thus declined to fulfill its statutory duty. The Rule 472 court also, in error, concluded the programming credit was a matter for the Department of Corrections. That is of no moment, however, where defendant's 10-year sentence was within the terms of the negotiated plea bargain and within the permissible sentencing range for UUWF. See *People v. Johnson*, 2019 IL 122956, ¶ 45. By analogy, our supreme court in *Johnson* recently determined that a defendant who enters into a negotiated plea agreement may not challenge his sentence as improper, based on the trial court's erroneous reliance on statutory aggravating factors, without first seeking to withdraw his guilty plea. *Id.* ¶ 57. In other words, such a sentencing error by itself does not render the plea invalid. *Id.*

¶ 19    As in *Johnson*, here defendant does not contend his sentence exceeded the permissible statutory penalty for the UUWF offense, nor does he claim that a sentence of 10 years is unconstitutional. Rather, he seeks to enforce the agreement, which was to his benefit, while seeking reconsideration of the credits that were a negotiated aspect of his sentence. While

---

[6]After reviewing the morass of statutes and rules governing credits, and given that they are otherwise controlled by the Department of Corrections upon a defendant's commitment to prison (see 730 ILCS 5/3-2-2(1)(n), 3-6-3(a)(1) (West 2022)), it is understandable that the circuit court wished to pass along the duty of determining credits to the Department of Corrections. Indeed, previously, statutes were interpreted as permitting courts to delegate to the Department of Corrections the task of calculating presentence custody credits. See *People v. Stuckey*, 93 Ill. App. 3d 260, 262 (1981). Because this subject generates confusion and frequent legal challenges, it would behoove the legislature to clarify and simplify the system for awarding credits. We can see no reason for encouraging incarcerated individuals to participate in programs that potentially award them credits against their sentence (see 730 ILCS 5/3-6-3(a)(1.5)(A) (West 2022)), only to have the credits either be not counted or statutorily unavailable.

[7]We have found *Montalvo* has been effectively overruled in part. See *infra* ¶ 24.

defendant claims he is *not* seeking "an increase" in the credit already awarded if, as he concedes, the program credits were not a negotiated term of his plea agreement, he is doing just that.[8] The relief he seeks therefore is an amendment of the sentencing judgment, not merely a correction. See *People v. Young*, 2018 IL 122598, ¶ 30; *People v. Scheurich*, 2019 IL App (4th) 160441, ¶¶ 21-25; 735 ILCS 5/2-1801(a) (West 2022) (noting the circuit court's sentencing judgment or order shall constitute the mittimus). He cannot do so without first moving to withdraw his plea, which, as established, he did not do.[9] See Ill. S. Ct. R. 604(d) (eff. Dec. 23, 2022).

¶ 20    We thus agree with the State that *Wells* forecloses defendant's claim. To be clear, the record reveals that, following required admonishments, on July 25, 2023, defendant knowingly and voluntarily entered into a negotiated plea agreement with the State, to the less serious charge of UUWF (count II) in exchange for a minimum of 10 years in prison out of a possible 14 years and the State's nol-prossing of counts. The court entered an order to that effect but nonetheless continued the cause for sentencing and a determination of credits. See Ill. S. Ct. R. 402(d)(2) (eff. July 1, 2012) (noting a court may conditionally concur in the plea disposition and then receive evidence in aggravation or mitigation); *People v. Smith*, 406 Ill. App. 3d 879, 888-89 (2010) (noting plea agreements are between the State and the defendant). The record reveals that, consistent with the parties' agreement, the court concurred in the 10-year sentence and agreed-

---

[8]In his reply brief, defendant commits an about-face, arguing that the *court* promised the credits and therefore the guilty plea did not represent a complete and final expression of the parties' agreement. Aside from the fact that pleas are negotiated between the State and a defendant, not the court (see *infra* ¶ 20), defendant appears to be arguing that there either was no final plea judgment or the plea was not fully negotiated. His argument does not comport with his appeal. See *People v. English*, 2022 IL App (1st) 210725, ¶ 24 (noting a final judgment determines the litigation on the merits or some definite part thereof); see also Ill. S. Ct. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief ***.").

[9]This case contrasts with *People v. Scheurich*, 2024 IL App (5th) 230357-U, ¶ 20, which we cite for persuasive authority, where the defendant was not required to withdraw his guilty plea before pursuing credits given that his plea was not fully negotiated. See Ill. S. Ct. R. 23(e) (eff. June 3, 2025).

upon 396 days' sentencing credit for time served. It was then that defendant requested the additional program credits.

¶ 21    The record suggests these program credits were not contemplated by the parties as a negotiated term. *Cf. People v. McDermott*, 2014 IL App (4th) 120655, ¶ 27 (noting that, where "a specified amount of sentence credit is included within the terms of a defendant's plea agreement with the State, the defendant is entitled to the amount of sentence credit promised").[10] While the trial court stated it had "no objection" to the Department of Corrections "considering" defendant's sanitation work and education courses towards "additional days of credit," the court expressly stated it would not award that credit from the bench. Defendant never offered a precise calculation of program credits due, the State never responded to the colloquy between defendant and the court on these credits, and the trial court never promised any specific program credits. They were not included in the sentencing orders, one of which also constituted the mittimus, notwithstanding that the handwritten order referenced the program work. See *Young*, 2018 IL 122598, ¶ 30; *Scheurich*, 2019 IL App (4th) 160441, ¶¶ 21-25; 735 ILCS 5/2-1801(a) (West 2022) (noting the circuit court's sentencing judgment or order shall constitute the mittimus). Yet, defendant persisted in finalizing his plea. See *McDermott*, 2014 IL App (4th) 120655, ¶ 30; see also *People v. Vara*, 2018 IL 121823, ¶ 14 (noting the final judgment is the sentence).

¶ 22    *Wells* counsels that "the *presumption* runs in favor of enforcing the specific terms of a plea deal that is a complete and final expression of the parties' agreement." (Emphasis added.) *Wells*, 2024 IL 129402, ¶ 28. In so holding, *Wells* overruled two appellate court cases, *People v. Ford*,

---

[10]Notably, *McDermott* involved a postconviction petition that addressed due process constitutional concerns. *McDermott*, 2014 IL App (4th) 120655, ¶¶ 22, 26. In its holding, *Wells* expressly noted such concerns were not at issue in that case. *Wells*, 2024 IL 129402, ¶ 24 n.5. They are similarly not at issue here.

2020 IL App (2d) 200252, ¶¶ 22-23, 28, and *People v. Malone*, 2023 IL App (3d) 210612, ¶¶ 19-21, involving oral plea agreements, wherein the courts held a contrary principle—that additional credits may be sought where the record does not " 'conclusively show that the parties agreed to *exclude*' " the credit. (Emphasis added.) *Wells*, 2024 IL 129402, ¶ 28 (quoting *Ford*, 2020 IL App (2d) 200252, ¶ 28). Thus, notwithstanding that *Wells* addressed a written plea agreement, the supreme court anticipated the situation that presents itself here involving an oral plea agreement. Following *Wells*, for the program credits to be part of the plea, the record must clearly show that defendant and the State agreed to the express term, and any doubts arising from the record will be resolved against awarding the credit.[11] See *id.* Further, in overruling *Ford* and *Malone*, *Wells* demonstrates that even certain credits mandated by statute may be waived during the plea process. See *id.*

¶ 23    Were we to allow defendant to now seek the program credits referenced at the sentencing hearing, we would be operating in a manner contrary to the supreme court, which we obviously cannot do. See *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 26 (noting an appellate court is required to follow supreme court precedent). Because the guilty plea did not include program credits as an essential, bargained-for term, defendant cannot now unilaterally modify the agreement by adding the alleged 319 days of program credit. See *Wells*, 2024 IL 129402, ¶ 30; *People v. Evans*, 391 Ill. App. 3d 470, 474 (2009). This is notwithstanding the plea court's erroneous assurances that defendant could seek additional credits from the Department of Corrections. See *Johnson*, 2019 IL 122956, ¶ 57.

---

[11]We note that, for there to be mutual mistake, *Wells* requires at least some "indication in the record that the parties intended" for the defendant to receive more than the agreed-upon credit. *Wells*, 2024 IL 129402, ¶ 26.

¶ 24　In reaching this conclusion, we reject defendant's reliance on *Montalvo*, 2016 IL App (2d) 140905. There, the defendant entered into a guilty plea in exchange for seven years in prison and 571 days' credit. *Id.* ¶ 4. When the defendant thereafter sought program credits for anger management, the trial court similarly, in error, assigned the Department of Corrections the duty of calculating them. *Id.* ¶ 9. On appeal, the appellate court held the trial court should have calculated the credits; as it did not, the appellate court awarded the defendant a portion of the credits. *Id.* ¶¶ 20-27. *Montalvo* was decided before *Wells* and *Johnson*, however. Those supreme court cases demonstrate that, to the extent the defendant in *Montalvo* entered into a fully negotiated guilty plea omitting the program credits, he would be foreclosed from later gaining them. *Montalvo* thus has been effectively overruled in that regard and is of no help to defendant.

¶ 25　In conclusion, defendant has not pointed to any precedent, statute, or constitutional basis supporting remand for additional sentencing credits. See *Wells*, 2024 IL 129402, ¶ 30; *People v. Whitfield*, 228 Ill. 2d 502, 520 (2007). Unlike the supreme court, we do not have supervisory authority. See *Whitfield*, 228 Ill. 2d at 520. Moreover, the supreme court's supervisory authority is reserved for extraordinary circumstances where the normal appellate process will not afford adequate relief, where justice demands, or where intervention is needed to keep an inferior court or tribunal from acting beyond its authority. *People v. Salem*, 2016 IL 118693, ¶ 21; *People v. Dolis*, 2020 IL App (1st) 180267, ¶ 37.

¶ 26　We observe that this case is unlikely to present that circumstance. While not necessary to our disposition, we note defendant has not demonstrated that he earned the statutory program credits. Defendant, for example, relies on section 3-6-3(a)(4)(A) of the Code for the proposition that he is entitled to sentencing credit for his sanitation work, but that statute only provides credit for completing a "substance abuse program, educational program, behavioral modification

program, life skills course, or re-entry planning" during pretrial custody. See 730 ILCS 5/3-6-3(a)(4)(A) (West 2022). Defendant has not established that sanitation work qualifies under the statute. He similarly points to section 3-6-3(a)(4.2) of the Code and section 107.520(b) of the Illinois Administrative Code, allowing credits for "work assignments." *Id.* § 3-6-3(a)(4.2); 20 Ill. Adm. Code 107.520(b) (2022). Those provisions, however, apply only to prisoners, not pretrial detainees. See 730 ILCS 5/3-6-3(a)(4.2) (West 2022); *People v. Williamson*, 2024 IL App (3d) 220501, ¶ 26 (noting section 3-6-3(a)(4.2) of the Code does not apply to individuals held in pretrial custody); see also *People v. Clark*, 2019 IL 122891, ¶ 23 (noting that, when the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally). Regardless, the document, which references "payroll," suggests that defendant was paid for his sanitation work, raising the question of whether that would exempt him from any credit.

¶ 27    Although defendant persists in his request for remand, he concedes there is no proof that he is entitled to the 210 days of educational programming credit, which he claimed in his Rule 472 motion. Specifically, he has failed to establish he completed a "full-time" educational program, according to the Department of Corrections. See 730 ILCS 5/3-6-3(a)(4)(A) (West 2022) (noting a defendant in pretrial custody is entitled to program credit where the defendant "successfully completed a full-time, 60-day or longer *** educational program"); 20 Ill. Adm. Code 107.520(j)(2)(A), (B) (2022) (defining full-time as, *inter alia*, ongoing and regularly scheduled, with a minimum of 10 hours per week). The documents defendant submitted simply show that, over six months (between February and July 2023), he completed 53 courses with 46.83 course hours and 84.39 "hours in education," plus fewer than 10 hours in business and parenting

14

education, respectively. These documents, in short, do not establish defendant qualifies under the statute or rules for the educational credit.

¶ 28                                  CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court denying defendant's Rule 472 motion, as defendant entered into a fully negotiated guilty plea and is foreclosed from seeking a modification to the plea agreement.

¶ 30    Affirmed.

*People v. Perteet*, 2025 IL App (1st) 241141

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CR-9104; the Hon. James B. Linn and the Hon. James B. Novy, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Katie Anderson, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Paul E. Wojcicki, and Amari K. Dawson, Assistant State's Attorneys, of counsel), for the People. |