# Illinois Official Reports

## Supreme Court

<div style="border:1px solid">

### *People v. Wells*, 2024 IL 129402

</div>

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EMANUEL WELLS, Appellant. |
| Docket No. | 129402 |
| Filed | March 21, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. J. Casey Costigan, Judge, presiding. |
| Judgment | Judgments affirmed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Catherine K. Hart, Deputy Defender, and Gregory G. Peterson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.<br><br>Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Jalan L. Jaskot, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices          JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1          Defendant, Emanuel Wells, entered into a fully negotiated plea agreement with the State. The key terms of the agreement were that (1) Wells would plead guilty to one count of unlawful possession of cannabis with the intent to deliver, (2) the State would dismiss the remaining counts, (3) Wells would receive the minimum six-year sentence, (4) Wells would pay a $100,000 street value fine, and (5) Wells would receive credit for the 54 days he had spent in custody. After the trial court sentenced Wells pursuant to the agreement, Wells filed a motion to receive credit for time he spent on home detention prior to the plea. The trial court denied the motion. The appellate court affirmed, holding that "a fully negotiated guilty plea constitutes a waiver of presentence custody credit not provided for in the plea agreement." 2023 IL App (4th) 220552-U, ¶ 22. We allowed Wells's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2021)), and we now affirm the appellate court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3          On October 11, 2020, Wells was arrested at the Bloomington airport, where he had in his possession approximately 25 pounds of a substance containing cannabis. Wells was indicted on one count of cannabis trafficking (720 ILCS 550/5.1 (West 2020)) and two counts of unlawful possession of cannabis with the intent to deliver (*id.* §§ 5(g), 4(g)). Wells remained in custody for 54 days from October 11, 2020, until December 3, 2020, when he posted bond.

¶ 4          As a condition of release, the McLean County circuit court placed Wells on 24-hour GPS monitoring with an ankle bracelet. Wells had a curfew and was only permitted to leave his house for work, church, and medical appointments. In January 2021, the trial court relaxed the bond conditions to allow Wells to be out of his home from 9 a.m. to 3 p.m. In April 2021, after defendant got a job as a forklift driver, the trial court extended Wells's curfew to 8 p.m. Finally, on June 29, 2021, the trial court removed the bond conditions of GPS monitoring and curfew.

¶ 5                                  A. Plea Proceedings

¶ 6          On November 5, 2021, the parties agreed to a fully negotiated guilty plea. Wells pled guilty to count II of the indictment, the Class X felony of unlawful possession of cannabis with the

intent to deliver. Wells received the statutory minimum[1] six-year sentence and a street value fine of $100,000. The State agreed to dismiss the other two counts.[2]

¶ 7　　The following colloquy occurred at the plea hearing:

"THE COURT: It's my understanding that you've reached an agreement today to where you would be pleading guilty to that charge. You would pay the fines and costs that are summarized in the financial sentencing order that I'm showing to you. There would be a $100,000 street value fine, sentenced to six years in the Department. You have credit for 54 days at this point in time. Your fines and costs would be taken care of within three years from your release from the Department. ***

Does that accurately state your agreement today?

MR. WELLS: Yes, sir."

¶ 8　　The parties also executed a written plea agreement that was signed by the assistant state's attorney, Wells, and Wells's attorney. One provision of the agreement provides: "The Agreement is as follows *** The court will impose as an agreed sentence in this case the following: *** six years imprisonment in IDOC *** [and] CREDIT 10/11/2020 TO 12/03/2020 (54 DAYS)." The factual basis established that Wells arrived at the Bloomington airport with a checked bag that contained approximately 25 pounds or 11,702 grams of a substance containing cannabis packaged for sale. The trial court accepted the parties' agreement and sentenced Wells consistent with the plea agreement.

¶ 9　　Wells did not file a postplea motion or a direct appeal. Instead, on March 31, 2022, Wells filed a motion titled "Motion for Order Nunc Pro Tunc" requesting that the trial court amend his mittimus to reflect credit for time he spent on "GPS Monitoring." Wells requested credit for the period from December 3, 2020, to June 16, 2021.[3] The trial court denied the motion in a docket entry that states, "Defendant was given the correct pretrial detention credit on this case."

¶ 10　　　　　　　　　　B. Appellate Court Proceedings

¶ 11　　On appeal, Wells argued that (1) he was entitled by statute to an additional presentence custody credit of 208 days and (2) he did not explicitly agree to waive the additional credit. 2023 IL App (4th) 220552-U, ¶ 2. The court first discussed the principle that a "fully negotiated guilty plea constitutes a waiver of presentence custody credit not provided for in the plea agreement." *Id.* ¶ 22. Based on that principle, the court held that, because Wells "bargained for a disposition providing for a specified amount of presentence credit and other significant benefits, he waived the right to any additional credit." *Id.* ¶ 26. Thus, the court affirmed the trial court's judgment. *Id.* ¶ 32.

---

[1]Unlawful possession with intent to deliver, as charged, is a Class X felony. 720 ILCS 550/5(g) (West 2020). The sentence for a Class X felony "shall be a determinate sentence *** of not less than 6 years and not more than 30 years." 730 ILCS 5/5-4.5-25(a) (West 2020).

[2]We note that a conviction on one of the dismissed counts, cannabis trafficking, would have subjected Wells to a mandatory minimum sentence of 12 years. See 720 ILCS 550/5.1(b) (West 2020) (providing that a "person convicted of cannabis trafficking shall be sentenced to a term of imprisonment not less than twice the minimum term" for a Class X felony).

[3]Wells indicated the period totaled 166 days. The period actually totals 196 days.

¶ 12    We granted Wells's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 13                                    II. ANALYSIS

¶ 14    Wells again argues that he is entitled to statutory credit for the 208 days he spent on home detention. Wells contends that the appellate court improperly found waiver where the parties' plea agreement was silent as to credit for the time he spent on home detention. The State primarily argues that Wells waived any additional sentencing credit by entering into the fully negotiated plea agreement.

¶ 15                    A. Wells Did Not Forfeit His Rule 472 Argument

¶ 16    The State initially argues that Wells forfeited his argument that he is entitled to the additional credit because he mischaracterized his request for credit as a "Motion For Order Nunc Pro Tunc" instead of a motion under Illinois Supreme Court Rule 472 (eff. May 17, 2019). The State continues that Wells further did not invoke Rule 472 until his reply brief in the appellate court. We disagree with the State's forfeiture argument. Wells's motion asked the trial court to correct his mittimus to reflect credit that he believed he was entitled to. Rule 472 provides that "the circuit court retains jurisdiction to correct *** [e]rrors in the calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019). The substance of Wells's motion is consistent with the remedy available in Rule 472, and thus, we find that he did not forfeit his Rule 472 argument. See *People v. Patrick*, 2011 IL 111666, ¶ 34 ("Generally, the character of a motion is determined by its content or substance, not by the label placed on it by the movant.").

¶ 17                         B. Custody for Home Detention

¶ 18    Wells claims he is entitled to credit for the time he spent on home detention under section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2020)). Section 5/5-4.5-100(b) provides:

> "The trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in Section 5-8A-3 (730 ILCS 5/5-8A-3). Home detention for purposes of credit includes restrictions on liberty such as curfews restricting movement for 12 hours or more per day and electronic monitoring that restricts travel or movement. Electronic monitoring is not required for home detention to be considered custodial for purposes of sentencing credit." *Id.*

¶ 19    Wells contends he is entitled to credit for the entire 208 days he was on any form of home detention. The State agrees that, plea agreement aside, Wells would be entitled to credit for 127 days. The State questions whether Wells would be entitled to credit for the 81 days he spent on electronic monitoring under less restrictive conditions. The dispositive issue on Wells's claim for credit is whether Wells, by entering into a fully negotiated guilty plea that granted him 54 days of credit, agreed to forgo his right to credit for the time he spent on home detention.

¶ 20                    C. Plea Agreements Under Contract Principles

¶ 21    This court has long held that plea agreements are governed to some extent by contract law principles. See *People v. Evans*, 174 Ill. 2d 320, 327 (1996). "A plea agreement results when

the prosecutor and the defendant exchange promises to perform or refrain from performing specified actions." *People v. Navarroli*, 121 Ill. 2d 516, 521 (1988). The construction of a contract presents a legal issue we review *de novo*. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20.

¶ 22 "An agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it." *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962). "A contract is integrated when the parties intend it to be a final and complete expression of the agreement between them." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 661 (2007). When a contract is integrated, additional terms may not be added. See *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1921) ("If [the contract] imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties introduced into it every material item and term, and parol evidence[4] cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evidence is directed.").

¶ 23 Instead, in what we have described as the " 'four corners' " rule, a court initially "looks to the language of a contract alone." *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). "If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Id.* Consistent with the "four corners" rule, we have stated that neither party to a plea agreement should be able " 'unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.' " *Evans*, 174 Ill. 2d at 317 (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)); *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005) ("[W]hen a defendant enters a negotiated plea of guilty in exchange for specified benefits, such as the dismissal of certain counts or the promise of a certain sentence or sentencing recommendation, *both the State and the defendant* must be bound by the terms of the agreement." (Emphasis in original.)).

¶ 24 Based on these principles, we hold that, where a fully negotiated plea deal represents a complete and final expression of the parties' agreement, a presumption arises that every material right and obligation is included and neither party may unilaterally seek modification of the agreement.[5] Applied to this case, a presumption arises that the parties intended for Wells to receive exactly 54 days of credit because that was a clear and unambiguous term of the agreement. The plea deal here is a complete and final expression of the agreement between Wells and the State. The fully negotiated plea agreement encompassed all relevant considerations, and the parties expected the trial court to immediately enter a final judgment consistent with the terms of the agreement. In fact, specific terms in the written agreement, signed by Wells himself, made the agreement contingent on the trial court imposing a 6-year sentence with credit for 54 days. There is no ambiguity in what the parties intended the

---

[4]"Parol evidence" is evidence "extraneous" to the written contract. Black's Law Dictionary 1117 (6th ed. 1990).

[5]This holding is qualified by our previous recognition that the application of contract principles to plea agreements is tempered in some instances by due process concerns. See *Evans*, 174 Ill. 2d at 326-27. Wells has not raised any due process concerns specific to his case, and thus, we need not analyze when the enforcement of a plea agreement may raise constitutional concerns.

sentence and credit to be. Thus, the parties are bound by the terms of the written agreement. Wells is not entitled to additional credit not included in the agreement.

¶ 25    We recognize Wells's argument that a typical waiver did not occur here. As Wells argues, a waiver is the "intentional relinquishment of a known right." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004). On this record, it is not clear if Wells was aware of the potential credit for his time spent on home detention. However, Wells waived the right to the statutory credit by entering into a fully negotiated plea agreement that provided for 54 days of credit. Wells is foreclosed from now modifying the credit term of the agreement by adding 208 days of credit.

¶ 26    Wells speculates that the lack of credit was an oversight in the parties' agreement. In his view, the parties were mutually mistaken in not informing the trial court that he was entitled to the additional 208 days of credit. We have recognized that "contracting parties' mutual mistake may be rectified by recourse to contract reformation [citation], where they are in actual agreement and their true intent may be discerned." *People v. Donelson*, 2013 IL 113603, ¶ 20. However, the State has steadfastly rejected Wells's claim to the credit not included in the parties' agreement, and there is no other indication in the record that the parties intended Wells to receive more than the 54 days agreed upon. Thus, there is no mutual mistake.

¶ 27    To the extent that there was an "uninduced mistake" on Wells's behalf, he cannot unilaterally seek to modify the credit term of the agreement. *Evans*, 174 Ill. 2d at 327. Instead, Wells must allege that the plea of guilty was not made voluntarily and with full knowledge of the consequences. See *Whitfield*, 217 Ill. 2d at 183-84. However, Wells has not attempted to invalidate the plea. Instead, he seeks to maintain the benefits of the plea agreement, the dismissal of charges and minimum sentence, while increasing the amount of credit he receives.

¶ 28    Finally, we overrule the appellate court decisions relied on by Wells to the extent that they are inconsistent with our decision. See *People v. Ford*, 2020 IL App (2d) 200252, ¶ 28 ("[B]ecause the record does not conclusively show that the parties agreed to exclude such credit, we vacate the trial court's denial of the Rule 472 motion."); *People v. Malone*, 2023 IL App (3d) 210612, ¶ 19 ("[W]here the record does not conclusively show that the parties agreed to exclude credit as part of the plea agreement, the circuit court should not deny a defendant's motion to amend the mittimus to reflect the credit.").[6] Contrary to these cases, the presumption runs in favor of enforcing the specific terms of a plea deal that is a complete and final expression of the parties' agreement.

¶ 29                                    III. CONCLUSION
¶ 30    We conclude that the parties entered into a complete and final plea agreement that unambiguously provided Wells credit of 54 days for time served. Because the plea agreement is unambiguous, the parties are bound by the terms of the agreement. We decline Wells's invitation to unilaterally modify the agreement by adding 208 days of credit. We therefore affirm each of the lower courts' decisions.

¶ 31    Judgments affirmed.

_____

[6]We note that we overrule these cases on the specific basis described. We need not reach whether the result of either case would be different under the holding we reach.