NOTICE

Decision filed 10/15/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231103-U

NO. 5-23-1103

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 15-CF-970 |
| | ) | |
| JOSE O. VALDEZ, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err in denying the petitioner's postconviction petition, where the record is clear that he was present, with counsel, at the hearing where his financial sentencing order was discussed in open court. The record further reflects that the court complied with the applicable procedural requirements of the Post-Conviction Hearing Act in summarily dismissing his petition. As any arguments to the contrary would lack merit, we grant petitioner's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2   Petitioner Jose O. Valdez entered a negotiated plea of guilty to one count of unlawful possession of a controlled substance with intent to deliver over 900 grams of cocaine in violation of section 401(a)(2)(D) of the Criminal Code of 2012 (720 ILCS 570/401(a)(2)(D) (West 2020)), a Class X felony. He was sentenced to 15 years in the Illinois Department of Corrections (IDOC) and 3 years of mandatory supervised release. He did not file a direct appeal. He now appeals from the first-stage denial of his postconviction petition.

1

¶ 3     Valdez's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion.

¶ 4     This court gave Valdez an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit. However, Valdez has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and the accompanying memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 5                              BACKGROUND

¶ 6     In August 2015, the State charged Valdez with trafficking a controlled substance with intent to deliver over 900 grams of cocaine. Valdez was detained pending trial and a cash deposit bond was set at $1 million. Defense counsel filed a motion to amend the conditions of release, arguing that the $1 million cash bond was oppressive and exceeded the amount necessary to ensure Valdez's appearance in court, that Valdez lacked the financial means to post a bond but could post real property in lieu of cash, and that Valdez was not a flight risk due to his strong family ties and lack of criminal record. Counsel attached a substantive mitigation packet. In opposition, the State argued that Valdez, if convicted, faced a minimum of 30 years in prison, he was a resident of Texas and lacked connections to the community, and the case involved 4.5 kilograms of cocaine valued at $450,000. The court denied defense's motion, noting its concern that Valdez was a flight risk.

¶ 7     Through defense counsel, Valdez filed a second motion to amend conditions of bond, which advised the court that Valdez's brothers and sister were willing and able to post their real

property in lieu of cash to cover the deposit for his bond. Valdez's parents, wife, sister, and brother-in-law were present in court. The State did not object to the motion acknowledging that section 110-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-8 (West 2020)) allows for posting real property in lieu of cash. The court granted the motion. Defense counsel then filed a motion requesting that bond be lowered to $750,000 because the family could afford to pool their resources from home equity loans to post that amount. The court held a second hearing, where it expressed concern about the amount of cocaine recovered.

¶ 8      The defense showed that Valdez's sister, Rosa Flores, was authorized to receive deposits from her brothers, who could lend Valdez $70,000 and $5000, respectively. The court granted Valdez's motion to amend conditions of bond and reduced the deposit bond from $1 million to $750,000. The cash deposit was then posted in the amount of $75,000. The bond slip signed by both Valdez and Flores contained a notice to the payor of the cash deposit warning:

"I further understand any sum given as cash deposit may be used in the court's discretion for the payment of fine, costs, restitution or court appointed counsel Public Defender's fees. Therefore, money posted by the defendant, or by someone else, on his/her behalf may, or may not, be returned at the conclusion of the case. Ten percent of such money deposit will be retained by the Clerk as statutory bond costs with the balance being returned to the defendant or his/her designee less any amount applied to the payment of fines, costs, or restitution, and court appointed counsel fees."

¶ 9      Valdez entered a fully negotiated guilty plea in November 2020. The State informed the court that Valdez would plead guilty to an amended information—one count of unlawful possession of a controlled substance with intent to deliver over 900 grams of cocaine—and receive 15 years in IDOC at 75%. He also received credit for time served prior to being released on bond.

3

Valdez's sentence also included assessed fines, fees, costs, and assessments in the amount of $85,150, as reflected in the sentencing order. A portion of the posted bond was used to pay defense counsel's fees in the amount of $6975. The remainder of the posted cash bond was forfeited and applied to satisfy assessed fines, fees, costs, and assessments. The financial statement reflected that Valdez owed a balance of $17,125.

¶ 10    The court read Valdez the nature of the charge to which he was pleading guilty, as well as the potential sentencing range. Valdez said he did not understand everything that was said. The court explained that Valdez's deal was for 15 years and asked if he understood the potential penalties, and he said he understood. The court admonished Valdez that pleading guilty would waive his right to a trial, including his right to a jury and his right to confront the witnesses against him. Valdez said that he understood all of these admonishments. The State provided a factual basis, and Valdez signed a jury waiver form. The court accepted the plea as knowing and voluntary, and entered judgment pursuant to the agreement. The court then informed Valdez that he had 30 days to file a motion to withdraw his guilty plea and, if his motion was denied, 30 days after the denial to file a notice of appeal.

¶ 11    Valdez filed a timely *pro se* motion to withdraw his guilty plea, alleging ineffective assistance of counsel for (1) not informing him that he was required to serve 75% of his sentence, (2) not petitioning the court for a Spanish interpreter, (3) not enforcing his right to a speedy trial, and (4) not fully explaining the plea deal. Both of Valdez's attorneys then filed motions to withdraw. The record reflects that Valdez needed the assistance of a Spanish language interpreter early on in the case. However, the court then determined Valdez understood enough English that an interpreter would not be needed for pretrial proceedings. Ultimately, no interpreter was provided beyond the probable cause hearing.

4

¶ 12    The court held a hearing on the motions to withdraw, and both counsels were allowed to withdraw due to a conflict of interest. A public defender was then appointed to represent Valdez on his motion to withdraw guilty plea. Valdez, after conferring with appointed postplea counsel, dismissed his motion to withdraw guilty plea, reasoning that he did not want to risk the reinstatement of the original trafficking charges upon withdrawing his guilty plea. The court readmonished Valdez regarding his guilty plea rights and took care to ensure that he understood each right.

¶ 13    In July 2023, Valdez filed a *pro se* postconviction petition claiming that his constitutional rights were violated when he was not allowed to be present during the bail bond judgment hearing against him and requesting that the forfeited bond money be refunded to his brothers, who provided the funds to post the $75,000 bond. Valdez also claimed that his attorneys were ineffective for failing to file an assessment waiver and that they had been paid in full when they received bond money for attorney fees. Valdez's request for postconviction relief was summarily dismissed as frivolous and lacking merit because the record showed that Valdez was present, and represented by counsel, at the guilty plea hearing when his financial sentencing order was discussed in open court.

¶ 14    Valdez now appeals the summary dismissal of his postconviction petition.

¶ 15                                    ANALYSIS

¶ 16    OSAD argues that summary dismissal of the petition was proper, and there are no meritorious arguments to the contrary. In the memorandum supporting its *Finley* motion to withdraw as counsel, OSAD states that it considered raising two issues on Valdez's behalf: (1) whether the claims he raised in his *pro se* postconviction petition had an arguable basis in fact or law; and (2) whether the circuit court complied with the applicable procedural requirements in

summarily dismissing Valdez's petition. However, counsel determined that the issues would be without arguable merit. As we agree with counsel's assessment, we grant OSAD leave to withdraw.

¶ 17                    A. The Post-Conviction Hearing Act

¶ 18    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, "the circuit court determines whether the petition is 'frivolous or is patently without merit.' " *Id.* (quoting 725 ILCS 5/122-2.1(a)(2) (West 2022)).

¶ 19    In the present matter, the court dismissed Valdez's petition at the first stage. As our supreme court has explained, the first stage presents a low threshold for survival, where the petitioner need only present a limited amount of detail. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Our courts have required only that a *pro se* petitioner "allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act." *Id.*; see also *People v. Porter*, 122 Ill. 2d 64, 74 (1988) (stating that only a "gist" of a constitutional claim is needed at this stage). A *pro se* postconviction petition may be summarily dismissed only if, under a liberal construction construed in favor of the petitioner, it has no arguable basis either in law or in fact. *Hodges*, 234 Ill. 2d at 16, 21; 725 ILCS 5/122-2.1(a)(2) (West 2022). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16.

6

The circuit court's summary dismissal of a postconviction petition is subject to *de novo* review. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 20        B. Whether Valdez's *Pro Se* Claims Have an Arguable Basis in Law or Fact

¶ 21    In his *pro se* petition, Valdez claimed that his constitutional rights were violated when he was not allowed to be present during the bond judgment hearing, which resulted in the forfeiture of a $75,000 bond posted on his behalf by family members. However, this claim has no arguable basis in law or fact and is directly rebutted by the record.

¶ 22    The record reflects that Valdez was present at the guilty plea hearing at which time he entered a negotiated plea. Valdez's sentence included assessed fines, fees, costs, and assessments in the amount of $85,150 as reflected in the sentencing order. The court also discussed on the record a partial breakdown of how the bond would be forfeited and applied. A bond assignment to defense counsel in the amount of $6975 was allowed to satisfy attorney fees. The remainder of the posted $75,000 cash bond was forfeited and applied to satisfy assessed fines, fees, costs, and assessments. The court also asked Valdez whether he understood the terms of his plea agreement, and he answered that he did. We find that the record is clear that Valdez was present at the hearing at which the court informed him that the money posted for his bond would be forfeited to satisfy the fees imposed as part of his sentence.

¶ 23    Furthermore, Valdez requested in his petition that the $75,000 be returned to his brothers who posted the money on his behalf. However, the record reflects that his family was on notice that the bond money posted may be used to satisfy court fines and fees. As required by statute, the form signed by Valdez's sister included a written notice indicating that the bail may be used to pay costs, attorney fees, fines, or other purposes authorized by the court. 725 ILCS 5/110-7 (West 2020).

7

¶ 24     Valdez also alleged that his attorneys were ineffective for failing to file an assessment waiver. However, Valdez entered into a fully negotiated plea deal. The Illinois Supreme Court has ruled that "a fully negotiated plea deal represents a complete and final expression of the parties' agreement." *People v. Wells*, 2024 IL 129402, ¶ 24. This creates a presumption that "every material right and obligation is included and neither party may unilaterally seek modification of the agreement." *Id.* Here, the $85,150 in court costs, fines, fees, and assessments along with the forfeiture of the posted $75,000 was a part of the sentence to which Valdez agreed when he pled guilty. In order to challenge any portion of his sentence, including the imposed fines and fees, Valdez was required to move to withdraw his plea. See *People v. Johnson*, 2019 IL 122956, ¶ 43 (defendant who entered into a negotiated guilty plea could not challenge his sentence without first moving to withdraw his plea). Because he did not do so, he cannot now challenge the imposed fines and fees.

¶ 25          C. Circuit Court's Compliance With the Act's Procedural Requirements

¶ 26     Valdez filed his *pro se* postconviction petition on July 18, 2023. The court summarily dismissed the petition in a written order 87 days later on October 13, 2023. Valdez was given notice on October 17, 2023. The record contains no evidence of any improper participation by the State in the court's first-stage consideration of this petition. *People v. Scullark*, 325 Ill. App. 3d 876, 879 (2001). We find that because the circuit court dismissed the petition in a written order within 90 days and provided notice, and the State did not participate in the proceedings, no meritorious argument can be made that the court failed to follow proper procedure in summarily dismissing the petition. 725 ILCS 5/122-2.1(a)(2) (West 2022).

¶ 27                                   CONCLUSION

¶ 28    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and

affirm the circuit court's judgment.

¶ 29    Motion granted; judgment affirmed.