NOTICE
Decision filed 04/17/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241058-U

NO. 5-24-1058

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 21-CF-131 |
| | ) | |
| RONALD D. JOLLY, | ) | Honorable |
| | ) | Denton W. Aud, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in denying defendant's amended motion for order *nunc pro tunc*. Defendant entered into a fully negotiated guilty plea agreement that included an express provision for 115 days of sentencing credit for pretrial custody; accordingly, *People v. Wells*, 2024 IL 129402, bars the additional sentencing credit relief sought by defendant, which was not included in the plea agreement. Because no argument to the contrary would have arguable merit, defendant's appellate counsel is granted leave to withdraw, and the judgment is affirmed.

¶ 2    Defendant, Ronald D. Jolly, is serving a sentence of 17.5 years in the Illinois Department of Corrections, pursuant to a fully negotiated guilty plea agreement. He appeals the judgment of the circuit court of Wayne County that denied his amended motion for an order *nunc pro tunc*, in which he requested sentencing credit in addition to that provided for by the express terms of the plea agreement. The Office of the State Appellate Defender (OSAD) was appointed as defendant's appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis,

1

has filed a motion for leave to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD properly served defendant with notice. This court gave defendant the opportunity to file a response to OSAD's motion, and defendant has filed a response, which we discuss below. Having considered OSAD's *Finley* motion and memorandum, defendant's response, and the entire record on appeal, this court agrees with OSAD's assessment. We therefore grant OSAD's motion to withdraw and affirm the judgment of the circuit court of Wayne County.

¶ 3                                    I. BACKGROUND

¶ 4      This appeal involves the resolution by plea agreement of multiple felony and misdemeanor charges filed against defendant in Wayne County, beginning in 2021. At a pretrial hearing on March 16, 2023, defendant's counsel noted that although defendant was in custody following a new arrest, defendant previously "had posted bond in a few of the other cases," but was "not receiving any type of credit towards time spent in custody in that regard." Counsel requested that defendant's bond be revoked in the cases in which it had been posted. The circuit court stated that it had not seen such a motion made by a defendant, only by the State. The State agreed, and the circuit court asked defendant's counsel to file a written motion with citation to authority that supported defendant's position. The circuit court added that if defendant's goal was to revoke his bond so that he could get full credit for time served, "maybe *** I don't know, we could negotiate for time served, I don't know."

¶ 5      At a hearing on June 8, 2023, before a different judge, defendant, who was *pro se* at that point in the proceedings, raised the issue again, stating that his former counsel did not file the motion requested by the circuit court. Defendant stated that former counsel's failure to file the motion "was part of the communication breakdown" that led former counsel to withdraw.

2

Defendant asked if he could "check the status of" the motion. The circuit court informed defendant that the previous judge could answer his questions at defendant's next hearing, scheduled for June 15, 2023.

¶ 6     At the June 15, 2023, hearing, at which defendant was still *pro se*, defendant stated that he had sent "a potential plea agreement to the State." When the State denied knowledge of the proposed agreement, the previous judge stated that he thought "it would be important to see what [defendant] would agree to." The State agreed to look for the proposed agreement. The State thereafter announced that it had found the proposed agreement, but that the State was not prepared to address it at the present hearing. The circuit court clarified that the State had not rejected defendant's proposed agreement, or accepted it, but simply needed more time to consider it. Defendant stated that he understood.

¶ 7     Defendant thereafter stated that although "[b]ack in March" his former counsel asked for defendant's bond to be revoked, and the circuit court told counsel to make the request in a written motion, former counsel "never did." Defendant stated he wanted his sentencing credit "to be running" because defendant was "obviously, incarcerated." The circuit court noted defendant was "not being held on the other cases." The court then stated that

> "if you come to a negotiated plea and are sentenced, then it is my belief and I have—if I have anything to do with it, you get credit for the time you have been in jail. You will get credit for the time you have been over there."

The court added that "if you are sentenced to the Illinois Department of Corrections, you'll get credit for every day you have been in jail there regardless of what case it is on."

¶ 8     After the State expressed its views on the relief defendant requested, the circuit court stated, "if we go to trial on one or all these cases, then we are going to have to follow the law as to credit

3

for time served." The court further stated, "But it is my position if you work something out, I am willing to give you credit for all the time you have been over here regardless of what case it's on against any kind of sentence that may come up." The court added, "That's my saying that based on some kind of agreement." After discussing what might happen if one or more of the cases went to trial, the circuit court stated, "What I'm saying is that if there is an agreement reached, I'm willing and I would encourage the State to give you credit for every day you have spent over there regardless of what case it is on." The court asked defendant if he understood, to which defendant replied, "Yes." The court then added, "I can't just do that unless it is part of the agreement if we go case by case."

¶ 9 At a hearing on June 22, 2023, the issue was revisited. The circuit court noted that at the previous hearing, the court had stated that, "if an agreement was reached [the circuit court would] be willing to provide to [defendant] credit for all of the days that he'd spent regardless of what case it was on." The State noted that according to its calculations, as of the present date, defendant was entitled to 115 days of pretrial custody credit. The State added that it was still considering defendant's proposed plea agreement.

¶ 10 At a hearing on July 3, 2023, the circuit court asked for an update on the status of the negotiations, to which the State responded that it had made a written offer that resolved "all pending cases," but that defendant had rejected it. Defendant stated that the offer did not provide him credit for "the full time served in jail on both charges, as the [circuit court] said that I would *** receive for days that I was in jail." The circuit court stated that because there was no agreement, the cases "probably need[ed] to go forward." Defendant thereafter stated that he wished to use a bond assignment to hire private counsel to represent him.

4

¶ 11    At a hearing on January 9, 2024, before a judge newly assigned to the case, the State announced that it had reached a negotiated guilty plea agreement with defendant, who was represented at the hearing by his new counsel. Pursuant to the agreement, defendant would plead guilty to one count of armed violence, a Class X felony, and one count of aggravated fleeing or attempting to elude a peace officer, a Class IV felony. The recommended sentences would be 17.5 years' imprisonment, to be served at 50%, for the armed violence count, and a concurrent sentence of 3 years' imprisonment, also to be served at 50%, for the aggravated fleeing count. Defendant would receive credit for time spent in custody from August 31, 2021, to December 23, 2021, a total of 115 days. The State would dismiss the remaining charges against defendant in the various other cases defendant then had pending.

¶ 12    The circuit court asked defendant if the terms presented by the State were accurate. Defendant stated, "Yes." The court asked defendant if he wished to proceed with the plea agreement, and defendant answered, "Uh, yes, Your Honor." The circuit court explained the precise terms of the agreement to defendant again, including the potential range of penalties defendant faced on the charges to which he was pleading guilty. Defendant thereafter stated that he understood the sentencing ranges. Defendant confirmed that he had met with counsel "multiple times," and that defendant "had ample opportunity" to discuss the plea agreement with counsel. Defendant stated that he was satisfied with counsel's representation of defendant.

¶ 13    The circuit court then further admonished defendant to ensure the plea agreement was knowingly, voluntarily, and intelligently made. Of relevance to this appeal, defendant thereafter stated that "something else" had been promised to defendant, and that he wished to address the court. The circuit court suggested defendant first confer with defendant's counsel, which defendant did. Defendant still wished to address the court, and when allowed to do so, defendant stated that

during a prior court appearance, the judge previously assigned to the case had told defendant that the judge "would make sure [defendant] received credit for all of the time while incarcerated for whatever plea agreement was reached." The new judge stated that the previous judge could not "necessarily make promises to" defendant about such matters.

¶ 14    After further discussions on and off the record, defendant's counsel stated that defendant no longer wanted to enter into the plea agreement. Counsel further stated that he believed he needed to withdraw from representing defendant. The circuit court asked defendant if he wished to speak, and defendant reiterated his position that the previous judge told defendant that the previous judge "would make sure that [defendant] got credit for the time that [defendant] served." Defendant contended the credit "was promised to" him.

¶ 15    Following additional discussions off the record, and a recess, the parties convened on the record and the circuit court stated that its review of the prior proceedings did not show that, by law, defendant was entitled to the additional credit he requested, because defendant's bond was "never revoked" in the manner requested by defendant. Defendant again conferred privately with his counsel. Thereafter, defendant stated that he wished to proceed with the plea agreement, but also wanted the judge "to consider the promise made to" defendant by the previous judge. The circuit court stated that the issue would have to be resolved before the plea agreement could go forward, and further discussions ensued, in which defendant stated that he wanted to take the plea agreement, but also wanted the additional credit against his sentence. The circuit court stated that it did not believe there was an agreement at that time, because the State indicated that the proposed plea agreement was for 115 days of pretrial custody credit, and defendant wished to alter that provision unilaterally.

6

¶ 16    Eventually, after further discussions on and off the record, defendant's counsel stated that he had explained to defendant that defendant could either accept the plea agreement as it was presently written, or could move forward with a trial. Counsel stated that defendant had indicated that defendant wished "to accept the plea agreement as it [was] written" and to "reject any claim that he would have as to [the previous judge's] statements to him." The circuit court again asked defendant if he had "ample" time to confer with counsel, and if he was satisfied with counsel's representation, and defendant again answered "Yes" to each question. The court thereafter stated, "So just so we're clear, your desire today is to accept the offer by the State's Attorney?" Defendant answered, "Yes."

¶ 17    The circuit court again discussed the terms of the agreement in detail, and ensured defendant understood them. Of relevance to this appeal, the circuit court asked defendant if defendant was "also agreeing that [defendant] would receive credit for 115 days despite any sort of other issue which was apparently not resolved," and if defendant was "acknowledging" that defendant was entitled to that 115 days only, to which defendant responded, "Yes." Defendant's counsel added that—"just to be more clear"—defendant was "giving up any claim" related to what defendant believed the previous judge had told defendant. The circuit court asked if this was correct. After conferring privately with counsel again, defendant stated, "I'm taking the—the—115 day thing." The circuit court asked again if defendant was "agreeing to 115 days," to which defendant responded, "Yes. Yes." Defendant agreed that he was entering into the plea agreement of his "own free will" and that no one had "forced" or "threatened" him to enter into it.

¶ 18    The State provided a factual basis for the agreement, which included that defendant fled from a police officer "at a high rate of speed," which resulted in a high speed chase. Ultimately, defendant stopped his vehicle, but then ran from the officer, disappearing "into the woods." A .22-

caliber rifle was recovered from the scene, and defendant "was captured the next day." Defendant agreed that if the case were to go to trial, the State could "provide sufficient evidence to meet the factual basis." The State then recited defendant's criminal history, which defendant agreed was accurate. Defendant thereafter acknowledged that in exchange for defendant entering into the guilty plea agreement, the State agreed to dismiss "multiple Class X felonies, multiple Class I felonies, multiple Class II felonies, [and] multiple Class III felonies."

¶ 19    The circuit court accepted defendant's "plea as knowingly, understandingly, and voluntarily made, [and] supported by a factual basis." The court sentenced defendant in accordance with the terms of the agreement, then admonished defendant as to defendant's appeal rights. A docket entry recorded on that same date, January 9, 2024, stated that the parties agreed that defendant's "sentences would be served at 50% and that defendant is entitled to 115 days of pretrial custody credit." The entry further stated, "Defendant persists in plea of guilty per the plea agreement after much discussion regarding sentencing credit for pretrial custody." The entry recounted some of the history regarding defendant's requests for sentencing credit, and stated, "Following multiple discussions between Defendant and [defense counsel], Defendant makes it clear that he is adamant about accepting the plea agreement as presented with 115 days of pretrial custody credit." The entry stated, "After multiple inquiries, the Court finds the plea is knowingly, voluntarily, and intelligently made."

¶ 20    On March 25, 2024, defendant, again acting *pro se*, filed a motion for order *nunc pro tunc* wherein defendant claimed that he was entitled to additional credit against his sentence for time spent in pretrial custody. Defendant contended that although he received 115 days of credit as part of the agreement, he was in fact entitled to 1,030 days of credit in total, which meant that he was owed an additional 915 days of credit. Filed with the motion was a copy of the mittimus, showing

8

the 115 days of credit that were awarded to defendant. On July 1, 2024, defendant filed an amended motion for order *nunc pro tunc* that was substantially similar to his original motion, including with regard to the relief requested: an additional 915 days of credit.

¶ 21    A hearing on the amended motion was held on September 24, 2024. Defendant reiterated the arguments in his motion, specifically contending that the previous judge "instructed [defendant] that whatever plea agreement was reached, if one was to be reached, that [the previous judge] would ensure that [defendant] would be accredited [*sic*] time that [defendant] spent in the jail." The State countered that the transcript of the guilty plea hearing showed that it was "absolutely crystal clear what was being bargained for" in the agreement, and that defendant was bound by the agreement. The circuit court noted a recent Illinois Supreme Court case, *People v. Wells*, 2024 IL 129402, which the circuit court stated "dealt with this exact issue." The circuit court stated that it had thoroughly questioned and admonished defendant regarding the sentencing credit issue prior to the circuit court accepting the plea agreement, and added that defendant "made a plea agreement which ultimately trumps anything that [the previous judge] told [defendant]." Accordingly, the circuit court denied defendant's amended motion. The circuit court's docket entry stated that the motion was denied because defendant's receipt of "115 days of credit was a term of the plea agreement reached" by the parties on January 9, 2024, and that pursuant to *Wells* "any additional time that [defendant] could request is waived." This timely appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant appeals the circuit court's judgment that denied defendant's amended motion for order *nunc pro tunc*. As noted previously, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum that accompanies the motion, OSAD raises one potential issue: whether defendant's claim for additional sentence credit is barred by the terms of his negotiated

9

plea agreement. OSAD concludes that, pursuant to *Wells*, defendant's claim is barred. For the reasons that follow, we agree.

¶ 24    In *Wells*, the defendant entered into a fully negotiated plea agreement with the State. 2024 IL 129402, ¶ 1. One of the provisions of the agreement was that the defendant "would receive credit for the 54 days he had spent in custody." 2024 IL 129402, ¶ 1. After the defendant was sentenced in accordance with the agreement, the defendant filed a motion to receive credit for time the defendant spent on home detention prior to entering his plea. 2024 IL 129402, ¶ 1. The *Wells* court noted the longstanding rule "that plea agreements are governed to some extent by contract law principles." 2024 IL 129402, ¶ 21. The court further noted that if a contract is facially unambiguous, a court must interpret the contract as a matter of law, without resorting to parol evidence. 2024 IL 129402, ¶ 23. The court held that if a fully negotiated plea agreement represents the complete and final expression of the parties' agreement, there is a presumption "that every material right and obligation is included and neither party may unilaterally seek modification of the agreement." 2024 IL 129402, ¶ 24. Applying these principles to the case before it, the *Wells* court first noted that the defendant's agreement with the State included, as "a clear and unambiguous term," that the defendant was "to receive exactly 54 days of credit." 2024 IL 129402, ¶ 24. The court stated that the inclusion of that term "made the agreement contingent on the" award of 54 days of credit. 2024 IL 129402, ¶ 24. The court reasoned that there was "no ambiguity in what the parties intended the sentence and credit to be," which meant that the parties were "bound by the terms of the written agreement" and that the defendant was "not entitled to additional credit not included in the agreement." 2024 IL 129402, ¶ 24.

¶ 25    In the present case, as in *Wells*, the amount of credit defendant was to receive for time spent in pretrial custody was an express term of the fully negotiated plea agreement. In fact, as described

10

above, it was discussed in court in extensive detail on the day the plea agreement was presented to the circuit court, and the circuit court accepted the plea agreement only after multiple assurances from defendant that he agreed to 115 days of credit. Thus, the agreement clearly and unequivocally represented "a complete and final expression of the parties' agreement" as to the sentencing credit issue, and defendant may not "unilaterally seek modification of the agreement." *Wells*, 2024 IL 129402, ¶ 24. Accordingly, OSAD is correct that *Wells* bars the relief sought by defendant in this appeal.

¶ 26    We note that defendant's response to OSAD's *Finley* motion does not address *Wells* at all, and does not reiterate defendant's claim in the circuit court that defendant was "promised" additional credit. Instead, defendant's response argues that he should have been permitted to revoke his bond in the circuit court, and points to case law he believes supports that proposition. However, at no point has defendant alleged that his plea of guilty was involuntary, and it is axiomatic "that a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Accordingly, defendant has waived the issue he raises in his response to OSAD's *Finley* motion.

¶ 27    We are compelled to mention as well that although defendant repeatedly stated in the circuit court that the previous judge in this case "promised" additional sentencing credit to defendant, the record does not support defendant's claim of any type of "promise" from that judge. Defendant's discussions with the previous judge about sentencing credit are recounted in detail above. When viewed in the context in which they were made, it is clear that each of the previous judge's statements about sentencing credit was conditioned upon an *agreement* being presented to the circuit court, and reflected the judge's *willingness* to ratify an agreement that included sentencing

11

credit, not a promise to give defendant sentencing credit regardless of the express terms of any agreement presented to him. At the June 15, 2023, pretrial hearing, the judge stated that

"if you come to a *negotiated plea* and are sentenced, then it is my belief and I have—if I have anything to do with it, you get credit for the time you have been in jail. You will get credit for the time you have been over there." (Emphasis added.)

The judge added, "if you are sentenced to the Illinois Department of Corrections, you'll get credit for every day you have been in jail there regardless of what case it is on." Moments later, the judge stated, "if we go to trial on one or all these cases, then we are going to have to follow the law as to credit for time served," then added, "But it is my position *if you work something out*, I am *willing* to give you credit for all the time you have been over here regardless of what case it's on against any kind of sentence that may come up." (Emphases added.) The judge further added, "That's my saying that *based on some kind of agreement*." (Emphasis added.) After discussing what might happen if one or more of the cases went to trial, the judge reiterated, "What I'm saying is that *if there is an agreement reached*, I'm *willing* and I would *encourage* the State to give you credit for every day you have spent over there regardless of what case it is on." (Emphases added.) The judge asked defendant if he understood, to which defendant replied, "Yes." The court then added, "*I can't just do that unless it is part of the agreement* if we go case by case." (Emphasis added.) Clearly, there was no promise made to defendant by the previous judge regarding sentencing credit.

¶ 28                                    III. CONCLUSION

¶ 29    This court's examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Wayne County is affirmed.

12

¶ 30     Motion granted; judgment affirmed.