NOTICE
Decision filed 06/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241107-U

NO. 5-24-1107

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-923 |
| | ) | |
| ANDREW C. TOMS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court did not err in denying the defendant's petition for *mandamus*. The County Jail Good Behavior Allowance Act (730 ILCS 130/1 *et seq.* (West 2022)) does not apply to the defendant's sentence because the defendant was not sentenced to confinement in a county jail for a fixed term of imprisonment. Moreover, the defendant entered into a fully negotiated plea agreement that included an express agreement to 762 days of sentencing credit for pretrial custody; accordingly, *People v. Wells*, 2024 IL 129402, bars the additional sentencing credit sought by the defendant, which was not included in the plea agreement.

¶ 2  The defendant, Andrew C. Toms, appeals the judgment of the circuit court of Champaign County that denied his petition for *mandamus*, in which he requested sentencing credit in addition to that provided for by the express terms of his fully negotiated plea agreement. For the reasons that follow, we affirm the judgment of the trial court.

1

¶ 3                            I. BACKGROUND

¶ 4     The majority of the facts necessary to our disposition of this appeal are found in the transcript of the defendant's September 20, 2022, guilty plea proceedings. For reasons that are not clear from the record, that transcript was not included in the record on appeal in this case. However, the transcript was included in the record in a different appeal the defendant is currently pursuing, which is case No. 5-25-0582. This court may take judicial notice of the record in another case involving the same party or of public documents contained in the record of any other judicial proceeding if doing so would aid us in deciding the instant appeal. See, *e.g.*, *In re Wilma T.*, 2018 IL App (3d) 170155, ¶ 14. We may do so *sua sponte*, even if the parties have not asked us to do so. *In re N.G.*, 2018 IL 121939, ¶ 32. Accordingly, we take judicial notice of the September 20, 2022, transcript, contained in the record on appeal in 5-25-0582, and derive from that transcript the following facts related to the defendant's guilty plea proceedings.

¶ 5     At the outset of the September 20, 2022, proceedings, the trial court noted that it was the trial court's understanding that the defendant, who was present with counsel, and the State were "in discussion about a possible plea," but that the trial court had "jurors downstairs waiting" for a possible trial on that date. The parties attended to some pretrial matters outside the presence of the potential jurors, then the trial court announced a brief recess. Among the issues discussed prior to the recess was that the currently-existing offer from the defendant was for the defendant to plead guilty to aggravated battery with a firearm in exchange for a 15-year prison sentence to be served at 85%. Following the recess, the trial court stated that it understood that there had "been further negotiations," the State had consulted with the alleged victim, and that there "may very well be a plea to count [I]."

¶ 6      The trial court explained to the defendant that count I alleged that on August 1, 2020, the defendant "committed aggravated battery with a firearm in that [the defendant], in committing a battery, knowingly discharged a firearm causing bodily harm to" the victim, Christian Mbemba. The trial court ensured the defendant understood the charge and the possible penalties he faced, that he was not impaired by medication or disability, and that he understood the rights he was giving up by pleading guilty. The trial court then ensured the defendant's plea was voluntary, not the result of coercion or pressure.

¶ 7      Thereafter, the State explained the terms of the plea agreement, which included that in exchange for the plea of guilty to count I, the State would dismiss three additional felony criminal charges, found in counts II-IV. The State added that the defendant "would receive credits for– credit for 262 days served." The State began to state that the defendant would provide DNA samples, but the defendant interrupted, saying "No, no." The defendant thereafter stated, "700–," the trial court stated, "You said 262–," and the State clarified "762." The State added, "Yeah. Sorry. I–762 days served." The State continued that it would dismiss an additional misdemeanor charge, and that the defendant "would owe $934 per the financial sentencing order before any waiver." The defendant, and defense counsel, both agreed that the foregoing were the terms of the plea agreement. The defendant agreed that no additional promises had been made to him to entice him to plead guilty.

¶ 8      The State recited the factual basis for the plea, which included that following "an altercation" with the victim, "[t]he defendant produced a revolver, chased after the victim, shot him two times and then fled the scene." Defense counsel agreed that the State could produce witnesses who would testify to that factual basis. The defendant then entered his plea of guilty to the charge of aggravated battery with a firearm, and the trial court stated that it found him guilty.

The trial court added that it found that the defendant's plea was "knowingly, understandingly, and voluntarily made," that it was supported by a factual basis, and that the trial court accepted it.

¶ 9　　The trial court entered judgment on the plea and proceeded to sentencing. The parties waived a presentence investigation, the State recited the defendant's criminal history, and the trial court entered a sentence "of 15 years in the Illinois Department of Corrections at 85%." The trial court added that the defendant was "entitled to credit for 762 previously served," and was "to pay financial obligations as set forth in the attached" financial assessment schedule. The trial court admonished the defendant of his appeal rights, and stated that a mittimus was to issue.

¶ 10　　The following facts are taken from the certified record in this appeal. Also on September 20, 2022, the defendant executed a written waiver of a trial by jury. That same day, a written sentencing order was filed, which contained the terms discussed above, and which stated that, *inter alia*, the defendant was "entitled to credit for 762 days previously served in the Champaign County Correctional Center." The mittimus, which was also filed on September 20, 2022, likewise contained the terms discussed above, and stated that, *inter alia*, the defendant was "entitled to receive credit for time actually served in custody" in the amount "of 762 days as to the date of this order."

¶ 11　　Nearly two years later, on September 16, 2024, the defendant filed *pro se* a motion for leave to file a petition for *mandamus*, as well as a proposed petition for *mandamus* (petition). In the petition, the defendant contended, *inter alia*, that he "should have been credited 2,256 days but only received 762 days of time served," which he alleged meant that he was "missing a total of 1,524 days of time served." He further alleged that the record demonstrated "that the parties *** discussed specific sentence credits during plea negotiations," and that the record did "not conclusively show that the parties agreed to exclude" any earned sentencing credit as part of the

4

plea agreement. He based his legal argument entirely upon the County Jail Good Behavior Allowance Act (Act) (730 ILCS 130/1 *et seq.* (West 2022)), which he claimed was applicable to his sentence.

¶ 12    On September 17, 2024, the trial court entered an order in which it stated that the defendant entered his plea of guilty in exchange "for a negotiated sentence of 15 years in prison with 762 days credit, to be served at 85%." The trial court ruled, *inter alia*, that "this was a negotiated plea and contract principles apply." The trial court added that "[the d]efendant received the benefit of his bargain pursuant to *People v. Wells*, 2024 IL 129402." The trial court denied the petition for *mandamus*, and this timely appeal followed.

¶ 13                                              II. ANALYSIS

¶ 14    The question of whether a mittimus is correct, or must be modified, is a purely legal question that is reviewed *de novo*. See, *e.g.*, *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 86. In his *pro se* brief on appeal, the defendant again claims that he "should have been credited 2,256 days but only received 762 days of time served," which he again claims means that he "is missing a total of 1,524 days of time served." He also reiterates his trial court claim that "the record shows that the parties discussed specific sentence credits during plea negotiations and does not conclusively show that[ ] the parties agreed to exclude sentencing credit as part of a plea agreement." As he did in the trial court, the defendant bases his legal argument entirely upon the Act (730 ILCS 130/1 *et seq.* (West 2022)), which he claims is applicable to his sentence.

¶ 15    However, the Act is not applicable to the defendant's sentence. Section 3 of the Act requires that a "good behavior allowance" be granted to "any person who commences a sentence of confinement in a county jail *for a fixed term of imprisonment* after January 1, 1987," with exceptions that are not applicable to this case. (Emphasis added.) 730 ILCS 130/3 (West 2022).

Thus, by its plain and express language, the Act applies only to a defendant who is sentenced to a fixed term in the county jail, not to one who, like the defendant here, was in jail awaiting trial. Because the defendant did not commence a sentence of confinement in a county jail for a fixed term of imprisonment, but instead commenced a determinate sentence in the Illinois Department of Corrections following his plea of guilty, the Act is not applicable to the defendant's claim for additional sentencing credit, and the trial court did not err in denying the defendant's petition for *mandamus*.

¶ 16    In addition, the defendant's claim that "the record shows that the parties discussed specific sentence credits during plea negotiations and does not conclusively show that[ ] the parties agreed to exclude sentencing credit as part of a plea agreement," is not supported by the record. As described above, the transcript of the defendant's guilty plea proceedings shows that the defendant's fully negotiated plea agreement[1] contained an express agreement by the defendant to 762 days of pretrial sentencing credit. In fact, when the State mistakenly stated that the defendant "would receive credits for—credit for 262 days served," the defendant interrupted, saying "No, no." The defendant thereafter stated, "700–," the trial court stated, "You said 262–," and the State clarified "762," adding, "Yeah. Sorry. I–762 days served." Thereafter, the defendant agreed that the terms of the plea agreement had been stated accurately for the trial court. When sentencing the defendant, the trial court specifically stated that the defendant was "entitled to credit for 762 previously served," and this was also stated in the written sentencing order, and in the mittimus.

¶ 17    We therefore agree with the trial court that *People v. Wells*, 2024 IL 129402, bars the defendant's claim. In *Wells*, the defendant entered into a fully negotiated plea agreement. 2024 IL

---

[1]"A fully negotiated plea agreement *** is one in which a defendant pleads guilty to certain charges in exchange for the State's agreement to dismiss other charges and recommend a specific sentence." *People v. Wells*, 2023 IL 127169, ¶ 31.

129402, ¶ 1. One of the provisions of the agreement was that the defendant "would receive credit for the 54 days he had spent in custody." 2024 IL 129402, ¶ 1. After the defendant was sentenced in accordance with the agreement, the defendant filed a motion to receive credit for time the defendant spent on home detention prior to entering his plea. 2024 IL 129402, ¶ 1. The *Wells* court noted the longstanding rule "that plea agreements are governed to some extent by contract law principles." 2024 IL 129402, ¶ 21. The court further noted that if a contract is facially unambiguous, a court must interpret the contract as a matter of law, without resorting to parol evidence. 2024 IL 129402, ¶ 23. The court held that if a fully negotiated plea agreement represents the complete and final expression of the parties' agreement, there is a presumption "that every material right and obligation is included and neither party may unilaterally seek modification of the agreement." 2024 IL 129402, ¶ 24. Applying these principles to the case before it, the *Wells* court first noted that the defendant's agreement with the State included, as "a clear and unambiguous term," that the defendant was "to receive exactly 54 days of credit." 2024 IL 129402, ¶ 24. The court stated that the inclusion of that term "made the agreement contingent on the" award of 54 days of credit. 2024 IL 129402, ¶ 24. The court reasoned that there was "no ambiguity in what the parties intended the sentence and credit to be," which meant that the parties were "bound by the terms of the written agreement" and that the defendant was "not entitled to additional credit not included in the agreement." 2024 IL 129402, ¶ 24. In the present case, as in *Wells*, the amount of credit the defendant was to receive for time spent in pretrial custody was an express term of the fully negotiated plea agreement, as made clear by the defendant's interruption of "No, no" when the State mistakenly stated that 262 days was the agreed amount of credit, as well as by the defendant's subsequent assertion that the corrected amount–762 days–was the term to which he was agreeing.

7

¶ 18        III. CONCLUSION

¶ 19 For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.


¶ 20 Affirmed.